Robert A. **ELLIOTT**, Respondent,

v.

Virginia **ELLIOTT**, Appellant.

No. 47813.

Supreme Court of Minnesota.

Oct. 20, 1978.

James P. Rorris, Minneapolis, for appellant.

Lindquist & Vennum and David Newhall, Minneapolis, for respondent.

Heard before KELLY, TODD, and YETKA, JJ., and considered and decided by the court en banc.

KELLY, Justice.

This is an appeal in an action for dissolution of a 36-year marriage. Appellant wife attacks only that portion of the Amended Judgment and Decree which is concerned with the division of the coverture property. We reverse and remand.

Appellant wife, now age 59, and respondent husband, now age 60, were married in 1941. They adopted and raised two children who both reached majority prior to the initiation of this dissolution proceeding. During their married life respondent worked full-time. From 1951 until his forced retirement in 1974, he worked as a salesperson for Frigidaire Division of General Motors. After retiring from Frigidaire, he was employed by Acme Personnel Service as an employment recruiter, a job he was holding at the time his dissolution petition was heard. Appellant, by contrast,

has had no significant work experience.[1] Except for a brief period during the early years of her marriage when she worked as a salesperson, she has had no full-time employment experience outside the home and has spent her time keeping house and raising the children.[2]

In 1974, the parties separated and respondent petitioned the court for dissolution of their marriage. At that time the parties' assets included an unencumbered homestead owned in joint tenancy worth approximately $50,000, two automobiles, and some household furnishings. Respondent received from his job at Acme Personnel Service a monthly draw of $500 against commissions plus reimbursement for verified expenses up to $100 per month. He also received $632.46 monthly in pension benefits from Frigidaire,[3] and his social security base was high enough to ensure that he would receive maximum payments if he waited until age 65 to claim them. Appellant was not employed and had no independent source of income.

The dissolution judgment and decree divided the equity in the homestead and the automobiles equally between the parties

and awarded appellant $250 per month in alimony. Appellant then requested amended findings or a new trial on the ground that the trial court had failed to include respondent's pension and social security rights within the coverture property to be divided.[4] In response to this motion, the court amended its findings to include appellant's "repeated drunkenness * * * over many years" as the cause of the breakdown of the marriage and stated that this finding had a bearing on the property distribution and alimony award. Nowhere in the court's findings were respondent's pension benefits or expected social security payments mentioned directly.

Appellant argues that her problem with alcoholism should neither have been labeled marital fault nor considered by the court in making its property distribution under Minn.St. 518.58. She also seeks a reversal of the amended findings of fact on the ground that the trial court erred in not considering respondent's pension benefits and his future right to receive social security payments as property for purposes of Minn.St. 518.54, subd. 5, and § 518.48.[5]

---

1. Her failure to work the required 30 quarters since the passage of the Social Security Act in 1937 makes her presently ineligible for social security benefits. Because she was married for more than 20 years to respondent, however, she is eligible under Federal law to receive one-half of respondent's benefits.

2. Although in her testimony at trial, she expressed an interest in working, she had no real employment skills. She also suffered from high blood pressure and at the time of trial she was hospitalized for alcoholism problems.

3. $174.47 came from a contributory pension plan and $457.99 from a noncontributory fund. Respondent testified that he paid taxes on the noncontributory benefits which would be reduced to $260.29 per month when he reached age 65 and became eligible for social security.

4. In her proposed findings appellant sought judicial recognition of respondent's pension and social security rights and their inclusion as coverture property, one-half of his pension benefits as they came due, and a division of the equity in the homestead that would compensate her for the portion of his social security benefits whose enjoyment by her was foreclosed by the dissolution. She also asked for an award of

one-third of Robert's gross monthly earnings as permanent alimony.

5. Minn.St. 518.54, subd. 5, defines property acquired during coverture as "any property, real or personal, acquired by the parties, or either of them, to a dissolution or annulment proceeding at any time during the existence of the marriage relation between them, or at any time during which the parties were living together as husband and wife under a purported marriage relationship which is annulled in an annulment proceedings. 'Property acquired during coverture' does not include any property real or personal, acquired by either spouse before, during, or after coverture, where said property is acquired as a gift, bequest, devise or inheritance made by a third party to one but not to the other spouse, or any property transferred from one spouse to the other."

The disposition of this property is covered by Minn.St. 518.58: "Upon a dissolution of a marriage, or upon an annulment, the court may make such disposition of the property of the parties acquired during coverture as shall appear just and equitable, having regard to the nature and determination of the issues in the case, the amount of alimony or support money, if any, awarded in the judgment, the manner by

■ Appellant's contention that the trial court incorrectly considered her alcohol problems as marital fault in the property distribution decision is not supported by the trial record or by the law of this state. A number of courts and commentators reject the introduction of fault into the property distribution decision.[6] Nevertheless, we believe that *Peterson v. Peterson,* 308 Minn. 365, 242 N.W.2d 103 (1976), was correctly decided. As we stated in *Peterson v. Peterson,* 308 Minn. 365, 373, 242 N.W.2d 103, 108:

> "We anticipate that the court will, consistent with our past pronouncements of suggested enumerated factors, consider evidence of marital misconduct as only one of many factors upon which it bases its decision."

The appellant's alcoholic problems were uncontroverted and long-standing. Although alcoholism should not be given much weight, it is one aspect of marital misconduct which the court is free to consider. The trial court's consideration of appellant's alcoholism was consistent with our standard and thus cannot be labeled an abuse of discretion. If appellant is dissatisfied with *Peterson,* the proper forum for her complaint is the legislature and not the courts.[7]

■ Appellant's second contention is that the trial court adopted an overly restrictive definition of property for purposes of its distribution upon marital dissolution. It is well settled in this state that the trial court's award of alimony or division of property will only be reversed on appeal if the court abused its discretion. *Hertz v. Hertz,* 304 Minn. 144, 146, 229 N.W.2d 42, 45 (1975) and cases cited therein. We cannot say that the court's actual distribution of property and award of alimony was an abuse of discretion whether respondent's pension and social security benefits are treated as property or income. However, it would have been appropriate for the court to have considered pension benefits as property for the purposes of distribution under Minn.St. 518.58. Other jurisdictions have almost unanimously ruled that such pension benefits are property.[8]

---

which said property was acquired and the persons paying or supplying the consideration therefor, the charges or liens imposed thereon to secure payment of alimony or support money, and all the facts and circumstances of the case."

**6.** See, e. g., *In re Marriage of Williams,* 199 N.W.2d 339 (Iowa 1972); *Chalmers v. Chalmers,* 65 N.J. 186, 320 A.2d 478 (1974); Foster & Freed, *Marital Property Reform in New York: Partnership of Co-Equals?* 8 Family L.Q. 170; Note, *The Economics of Divorce: Alimony and Property Awards,* 43 U.Cin.L.Rev. 133.

**7.** The Minnesota Legislature has just enacted a statute that prospectively (March 1979) makes marital fault an improper consideration in the property distribution decision. L.1978, c. 772, § 53.

**8.** *In re Marriage of Brown,* 15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561 (1976) (pension plan); *In re Marriage of Freiberg,* 57 Cal. App.3d 304, 127 Cal.Rptr. 792 (Ct.App.1976) (military benefits); *In re Marriage of Pope,* 544 P.2d 639 (Colo.App.1975) (retirement fund); *Ramsey v. Ramsey,* 96 Idaho 672, 535 P.2d 53 (1975) (military retirement pay); *Stigall v. Stigall,* 151 Ind.App. 26, 277 N.E.2d 802 (1972) (wife's pension and profit-sharing plan); *In re Marriage of Ralston,* 242 N.W.2d 269 (Iowa 1976) (railroad pension rights); *Lynch v. Law-*

rence, 293 So.2d 598 (La.App.1974) (noncontributory pension plan); *Hutchins v. Hutchins,* 71 Mich.App. 361, 248 N.W.2d 272 (1976) (retirement pension); *Ledbetter v. Ledbetter,* 547 S.W.2d 214 (Mo.App.1977) (wife's pension fund); *In re Marriage of Powers,* 527 S.W.2d 949 (Mo.App.1975) (profit sharing plan); *Stern v. Stern,* 66 N.J. 340, 331 A.2d 257 (1975) (partnership interest); *McGrew v. McGrew,* 151 N.J. Super. 515, 377 A.2d 697 (App.Div.1977) (future interest in a noncontributory retirement pension plan); *LeClert v. LeClert,* 80 N.M. 235, 453 P.2d 755 (1969) (retirement pay); *Marriage of Tiffee,* 27 Or.App. 211, 555 P.2d 798 (1976) (retirement fund); *Cearley v. Cearley,* 544 S.W.2d 661 (Tex.1976) (contingent interest in military pension); *Daniels v. Daniels,* 490 S.W.2d 862 (Tex.Civ.App.1973) (pension benefits); *Slaughter v. Slaughter,* 18 Utah 2d 274, 421 P.2d 503 (1966) (pension benefits); *Payne v. Payne,* 82 Wash.2d 573, 512 P.2d 736 (1973) (military pension benefits); *Wilder v. Wilder,* 85 Wash.2d 364, 534 P.2d 1355 (1975) (military pension based on intended reenlistment); *Pinkowski v. Pinkowski,* 67 Wis.2d 176, 226 N.W.2d 518 (1975) (pension fund). Of all the state courts that have decided this question, only Nebraska has held that the pension rights need not be divided as coverture property. *Howard v. Howard,* 196 Neb. 351, 242 N.W.2d 884 (1976); *Yelkin v. Yelkin,* 193 Neb. 789, 229 N.W.2d 59 (1975).

Treating respondent's future social security benefits as property is more difficult, however, because of questions of assignability and contingency.[9] Appellant could receive social security benefits in her own right if she were to complete approximately 10 quarters of work before retirement. During her marriage she completed approximately 20 of the 30 quarters necessary for eligibility. Similarly, respondent's early death would prevent his receiving any of the benefits for which appellant is seeking a compensatory award. Social security benefits are to be considered, however, because they represent a loss of spending power to the nonemployee spouse.

Consideration of these matters is within the discretion of the trial court in devising a property settlement and award of alimony which is equitable.

Although the amounts of the property settlement and alimony award do not indicate an abuse of discretion, it is unclear from the record whether the trial court considered respondent's pension and future social security benefits as property rights. It may be that the trial court correctly considered the pension rights as property rights and social security benefits as income in arriving at the disposition of property and the amount of alimony awarded. However, if the pension rights were regarded merely as income rather than property rights, the court may not have awarded appellant a portion of those rights believing that it had no power to do so. The record before us does not explicitly disclose whether or not the court considered pension benefits as property rights and social security benefits as future income. The pension benefits in this case should, as a matter of law, be treated as property rights. Therefore, we reverse and remand for further consideration by the trial court consistent with this opinion.

Upon the remand the trial court may consider the weight to be given the appellant's problem with alcohol, recognizing that it is a sickness and may or may not be cause by circumstances beyond her control. If less weight is given to alcoholism as a cause of the marriage breakup, the distribution of property and award of alimony should also be reconsidered. Likewise, a different distribution of property and a different award of alimony may be in order if the trial court did not feel free to treat the pension rights as property and in its discretion determines that a different distribution of property or a different alimony award would be more equitable.

Reversed and remanded.

SHERAN, C. J., took no part in the consideration or decision of this case.

---

**9.** Whether social security benefits are part of the coverture property has received less direct attention in the courts than has the division of pension rights. Nevertheless those courts that have ruled on their status have held that social security benefits should be considered in the division of property. *Zagajewski v. Zagajewski,* 161 Ind.App. 98, 314 N.E.2d 843, 846 (1974); *Locke v. Locke,* 246 N.W.2d 246, 254 (Iowa 1976); *Daniels v. Daniels,* 490 S.W.2d 862, 863 (Tex.Civ.App.1973); *Cleaver v. Cleaver,* 10 Wash.App. 14, 516 P.2d 508, 511 (1974). Since Federal law specifically precludes assignment of social security benefits, however, courts have tended to approve property distributions that compensate the nonemployee spouse in some way for his or her loss of access to the spending power of the benefits that results from the marital dissolution.