**In re the Marriage of Diane L. SWANSTROM, Petitioner, Respondent,**

v.

**William K. SWANSTROM, Appellant.**

**No. C1-84-484.**

Court of Appeals of Minnesota.

Dec. 18, 1984.

Heather Sweetland, Duluth, for respondent.

Nicholas J. Zuber, Duluth, for appellant.

Heard, considered and decided by POPO-VICH, C.J., and PARKER and LANSING, JJ.

## OPINION

LANSING, Judge.

William Swanstrom appeals from a judgment and decree that declares part interest in his company, a promissory note, and an investment fund to be marital property. He also disputes the award of permanent maintenance and attorney's fees to Diane Swanstrom. Diane Swanstrom cross-appeals, contending the trial court erred in determining her interest in the company and ordering distribution of that interest in delayed monthly payments rather than a lump sum and in failing to require William Swanstrom to maintain a medical insurance policy and a life insurance policy to secure his maintenance obligation. She also contends the award of $5,000 in attorney's fees was unreasonably low. We affirm in part and remand in part.

## FACTS

The parties were married in September 1961, and the marriage was dissolved in December 1983. At the time of trial William Swanstrom was 48 years old and Diane Swanstrom was 47. He is president and principal stockholder of the Dwight A. Swanstrom Co., an insurance agency founded by his great-grandfather. She did not work outside the home except during the first year of the marriage. They have three children, two of whom are still under 18.

The judgment and decree gave Diane Swanstrom custody of the two minor children, $800 per month in permanent maintenance, and $400 per month per child in support. Both parties received household goods of approximately the same value. Their other property was divided as follows:

*Property awarded to Diane Swanstrom*

| | |
|---|---:|
| Homestead equity | $ 60,900.00 |
| 1980 station wagon | 4,600.00 |
| Piper, Jaffray & Hopwood interest fund | 18,110.04 |
| 100 shares of Southern California Edison | $ 3,525.00 |
| Burnsville Hospital Revenue Bond | 5,212.00 |
| First Federal savings certificate | 11,669.00 |
| Three ounces of gold | 1,260.00 |
| Her interest in the Dwight A. Swanstrom Co., determined to be the value of 217 shares | 83,002.00 |
| Total | $188,278.04 |

*Property awarded to William Swanstrom*

| | |
|---|---:|
| Promissory note from Dwight A. Swanstrom Co. | 30,832.00 |
| Prudential insurance policy | 83.12 |
| Dwight A. Swanstrom Co. note minus his debt to the company | 4,407.66 |
| Profit sharing account | 92,688.13 |
| Cash value of life insurance policies | 2,198.06 |
| 455 shares of stock in Dwight A. Swanstrom Co. | 348,075.00 |
| Subtotal | $478,283.97 |
| Minus Diane Swanstrom's interest in stock | 83,002.00 |
| Total | $395,281.97 |

The judgment and decree also awarded Diane Swanstrom $5,000 in attorney's fees. It did not require William Swanstrom to secure his maintenance obligation with a life insurance policy or to continue the health insurance coverage obtained through his employment for the rest of the family.

## ISSUE

Did the trial court abuse its discretion in dividing the parties' marital property, providing for permanent maintenance and attorney's fees, and failing to require William Swanstrom to maintain life and health insurance policies?

## ANALYSIS

In dissolution cases the trial court is accorded broad discretion with respect to the division of property, maintenance, and provision for custody and support of children. There must be a clearly erroneous conclusion that is against logic and the facts on record before this court will find that the trial court abused its discretion. *Rutten v. Rutten,* 347 N.W.2d 47, 50 (Minn.1984); *Servin v. Servin,* 345 N.W.2d

754, 758 (Minn.1984) (the trial court's decision must be affirmed if it has an acceptable basis in fact and principle).

Many of the issues raised on appeal should have been addressed at the trial court level by a motion for amended findings or a new trial. Both parties have new counsel on appeal and are unable to explain why these steps were not taken below.

**A. Property Division.**

1. *Interest in the Dwight A. Swanstrom Co.*

William Swanstrom is the president and principal stockholder of the company. Over a 25-year period he acquired 455 of 483 shares of the company stock. The acquisitions can be summarized as follows (the original number of shares is listed first, and the number after two stock splits is in parentheses):

| | |
|---|---|
| Gift from father before marriage: | 2 shares (20) |
| "Gift" from father during marriage | 26.5 shares[1] (265) |
| "Gift" from corporation during marriage | 10 shares (100) |
| Purchased during marriage | 7 shares (70) |
| Total: | 45.5 shares (455) |

The trial court found 21.7 (217) shares marital property and 23.8 (238) nonmarital property. The court's memorandum does not indicate how this result was derived, but the calculation is not difficult to reconstruct by adding together all the shares except for those William Swanstrom acquired before the marriage and dividing that sum in half. The result is 21.7 (the sum determined to be marital property). The remainder (21.7 plus the 2 shares acquired before the marriage) equals 23.8 (the sum determined to be nonmarital property). The trial court thus found that about half of the stock was marital property and half was nonmarital property. The court then divided the marital property in

half to derive Diane Swanstrom's interest, and this figure was multiplied by the stipulated value to arrive at $83,002.

There is support in the record for the trial court's implied finding that about half the stock "given" to William Swanstrom by his father and the corporation was either intended to benefit the whole family or intended as compensation for services rendered to the company. The record shows that when William Swanstrom's father was alive he basically left all the responsibility for managing the company to his son. The corporate minutes show that stock was given "in gratitude for [appellant's] untiring services."

 In a complicated property division substantial deference must be given to the trial court's findings because " 'exactitude is not possible.' " *Gulbranson v. Gulbranson,* 343 N.W.2d 715, 717 (Minn.Ct. App.1984) (*quoting Rogers v. Rogers,* 296 N.W.2d 849, 853 (Minn.1980)). The trial court's division of interests in the company gives both parties credit for their contributions to the company. It was just and equitable, *see* Minn.Stat. § 518.58 (1982), and was not an abuse of discretion.

2. *Method of Payment.*

Diane Swanstrom contends the trial court should have awarded her interest in the company payable in a lump sum "to allow a finalization of the property division." The judgment and decree provides that William Swanstrom will pay the $83,002 owed to her when the child support payments cease and in the same increments as the child support payments ($400 per month when the older child becomes 18, $800 per month when the younger child becomes 18). There are other provisions in case the business is sold.

 The trial court arrived at this arrangement because appellant "has a severe cash flow problem and the assets are not subject to easy liquidation to effect an im-

---

1. This calculation assumes that one-half share appellant sold to his brother at one point came out of stock given to him by his father during

the marriage because that is how appellant acquired most of the stock originally.

mediate division of the property." The record supports this conclusion, and we find no abuse of discretion.

### 3. *The Promissory Note Inherited from Dwight Swanstrom.*

In July 1977 William Swanstrom's father sold 35 shares of his stock back to the company. In return the company gave him a promissory note for $123,200. That note was left to William Swanstrom and his brother in equal shares in Dwight Swanstrom's will. At the time of trial William Swanstrom's half was worth $30,832.

■ Appellant argues that this note was improperly counted as marital property. We agree that it is not marital property, but find that the note was not charged against his share. Not counting any interest in the corporation, Diane Swanstrom received $105,276.04; not counting either his interest in the corporation *or* the promissory note he inherited, William Swanstrom received $99,376.97. This was an equitable disposition of the property.

### 4. *The Piper, Jaffray & Hopwood Interest Fund.*

■ The trial court awarded the money in this fund, approximately $18,110.04, to Diane Swanstrom. Appellant argues that $12,279.82 of this fund is not marital property because it can be traced to funds inherited from his father. Respondent argues that there were other transactions over the years in which family money was added to the fund to make up for stock losses, so the fund lost its character as nonmarital property.

Although appellant has a colorable claim, we do not find the trial court's division to be clearly erroneous. The account may have been awarded to Diane Swanstrom simply because it was easy to segregate from other assets that are clearly marital property, such as the profit sharing account. The total property division is still equitable.

### 5. *First Federal Savings Certificate.*

The trial court awarded Diane Swanstrom a savings certificate valued at $11,669. The record shows that she cashed in the certificate at a discount and obtained about $10,733 immediately after William Swanstrom left their home in September 1982. She did this without his knowledge and used the money for family expenses, Christmas presents, and attorney's fees in the months before the trial. At the same time she was receiving $700 per month in temporary maintenance and $800 per month in child support, and she had received $750 for attorney's fees.

■ She argues that it was error for the trial court to charge the full value against her property award instead of the $4,500 remaining at the time of trial. Because she effectively liquidated and spent a completely marital asset, however, the trial court could count its full value in dividing the property. The decision was not an abuse of discretion.

### B. Maintenance.

William Swanstrom contends the trial court erred in finding that Diane Swanstrom will not be able to adequately support herself in the future and in granting her $800 per month in permanent maintenance. Minn.Stat. § 518.552, subd. 1 (1982), provides that maintenance shall be awarded if the spouse seeking it lacks sufficient property to provide for reasonable needs and is unable to adequately support himself or herself after considering all relevant circumstances.

The Minnesota Supreme Court held that permanent maintenance was warranted in a similar case. In *Arundel v. Arundel,* 281 N.W.2d 663 (Minn.1979), the court said:

> While it may be the trend in the law to provide alimony only so long as it is reasonably necessary for the once-dependent spouse to attain self-sufficiency, certain exceptional cases warrant an award of permanent alimony. The trial court recognized * * * that this is such a case. Petitioner has not been educated to a professional or marketable skill and

has been out of the job market for nearly 30 years. Her efforts during those years were devoted to raising five children and maintaining the family home in such a way as to contribute to the establishment and furtherance of her husband's career and to the affluent circumstances in which the family lived at the time of the separation. Now, at 51 years of age, with certain health problems and without vocational skills or independent resources, it is unreasonable * * * to expect [her] to be financially successful enough in the labor market to support her needs, although she will doubtless wish to make reasonable efforts to do so. She is entitled to suitable support. Such support is not simply that which will supply her with the bare necessities of life, but such a sum as will keep her in the situation and condition in which respondent's means entitle her to live. * * While the life style of both parties will inevitably be affected by the dissolution, petitioner is entitled to maintain her present standard of living to the extent that respondent is reasonably able to provide.

*Id.* at 666–67 (citations omitted).

The record shows that before the marriage Diane Swanstrom worked as a file clerk. She then devoted 22 years to raising their children so that William Swanstrom could further his career. She has no vocational skills or independent resources. She has completed about 100 credits at the University of Minnesota-Duluth, mostly in liberal arts courses. She attempted to pursue an accounting major but could not pass the math and computer courses despite several attempts. She is almost 50 years old, with health problems that may affect her ability to work. The trial court also took judicial notice of Duluth's high unemployment rate. We agree with the trial court that it is unreasonable to expect Diane Swanstrom to be financially self-sufficient.

■ Appellant concedes that some maintenance is necessary but contends that permanent maintenance of $800 per month is not justified. He argues that the trial court created the need for permanent maintenance by the way it structured the payments for Diane Swanstrom's interest in the company. Appellant agreed at oral argument, however, that the company is not liquid enough for a lump-sum payment, which Diane Swanstrom might have invested for income that would make permanent maintenance unnecessary. Under these circumstances we can see no abuse of discretion. This case is distinguishable from *Abuzzahab v. Abuzzahab*, 359 N.W.2d 12 (Minn.1984), and *McClelland v. McClelland*, 359 N.W.2d 7 (Minn.1984), in which the Minnesota Supreme Court found a demonstrated capacity for attaining a degree of self-sufficiency through employment and sufficient assets from the distribution of marital and nonmarital property to provide for the dependent spouses' reasonable needs.

■ In setting the amount of maintenance, the trial court did not consider future receipt of Social Security payments. *See, e.g., Taylor v. Taylor*, 329 N.W.2d 795, 799 (Minn.1983); *Elliott v. Elliott*, 274 N.W.2d 75, 77 (Minn.1978). The dissent relies on these two cases to find error in the trial court's failure to consider future Social Security payments. In *Elliott* the court held that it was within the trial court's discretion to consider the *husband's* receipt of Social Security to determine the wife's award of alimony, but failure to do so was not an abuse of discretion. In *Taylor* the court reversed the trial court's deduction of the wife's Social Security benefits from her share of the husband's pension benefits, but again stated that it was appropriate to consider Social Security income in evaluating her need for maintenance. We hold that the trial court's failure to consider future receipt of Social Security was not an abuse of discretion. Because we are remanding on insurance issues, however, the court may also consider, within its discretion and if it is raised by either party, the effect of future receipt of Social Security on the award of maintenance.

### C. Medical and Life Insurance.

Diane Swanstrom further contends that the trial court erred in failing to require William Swanstrom to provide medical insurance for her and the children. Minn. Stat. § 518.551, subd. 8 (Supp.1983), provides:

> The court shall also include in the requirements for each child support order a provision naming the child as a beneficiary on whatever medical, hospitalization or dental insurance or plan is available to the obligor on a group basis through his or her employer or union.

She also contends the trial court should have required William Swanstrom to secure the maintenance obligation with a life insurance policy. *See O'Brien v. O'Brien*, 343 N.W.2d 850 (Minn.1984). It does not appear from the record that the court considered either type of insurance. We therefore remand with directions to the trial court to consider whether William Swanstrom should be required to provide medical insurance for the children and a life insurance policy to secure his maintenance obligation. In deciding the latter, the court may consider the Social Security benefits, if any, to which Diane Swanstrom will be entitled in the future.

### D. Attorney's Fees.

The trial court awarded respondent $5,000 in attorney's fees pursuant to Minn. Stat. § 518.14 (1982). Both sides claim this was error. We hold that it was not. *See Eizenhoefer v. Eizenhoefer*, 292 Minn. 442, 443, 193 N.W.2d 628, 629 (1972) (the court is committed to a conservative policy with respect to the allowance of attorney's fees); *Kirby v. Kirby*, 348 N.W.2d 392, 394 (Minn. Ct.App.1984) (discretion to allow attorney's fees in dissolutions rests almost entirely with the trial court).

### DECISION

We affirm the trial court's decision on property division, permanent maintenance, and attorney's fees. We remand with directions to consider requiring William Swanstrom to maintain medical insurance for the children and a life insurance policy to secure his maintenance obligation. In addition, the trial court may reconsider the amount of maintenance in light of future Social Security benefits.

We also order William Swanstrom's maintenance obligation, suspended during the appeal, reinstated immediately.

Affirmed in part and remanded in part.

POPOVICH, Chief Judge (dissenting).

I respectfully dissent from the portion of the majority opinion affirming the trial court's award of $800 per month in permanent maintenance. Specifically, the trial court erred because it did not consider Diane Swanstrom's future receipt of social security payments when determining spousal maintenance.

The Minnesota Supreme Court has unequivocally stated:

> In determining a just amount for *spousal maintenance*, we are directed by Minn.Stat. § 518.552, subd. 2 (1980), to consider all relevant factors, including:
>
> > (a) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently * * .
>
> Future receipt of social security payments is a financial resource and must be considered in determining spousal maintenance.

*Taylor v. Taylor*, 329 N.W.2d 795, 799 (Minn.1983); *see Elliott v. Elliott*, 274 N.W.2d 75, 78 (Minn.1978). I would remand this issue to the trial court with instructions to adjust Diane Swanstrom's maintenance award to reflect her anticipated social security income.