**In Re the Marriage of Dale Richard FREDERIKSEN, petitioner, Appellant,**

v.

**Kathryn Irene FREDERIKSEN, Respondent.**

**No. C4-84-1709.**

Court of Appeals of Minnesota.

June 4, 1985.

Terrence E. Conkel, Gavin, Olson & Conkel, Ltd., Glencoe, for appellant.

Corrine D. Lynch, Lynch & Lynch, Willmar, for respondent.

Considered and decided by NIEREN-GARTEN, P.J., and FOLEY and LESLIE, JJ., with oral argument waived.

## OPINION

LESLIE, Judge.

Appellant Dale Richard Frederiksen petitioned to dissolve his marriage with respondent Kathryn Irene Frederiksen in July 1981. Following trial of this matter in June 1982 the trial court entered its findings of fact, conclusions of law and order for judgment dissolving the parties' marriage, dividing the marital property and allowing payment of spousal maintenance to respondent. After the trial court denied respondent's motion for amended findings, respondent appealed to a three judge district court panel. The appeals panel reversed and remanded the case for consideration of additional evidence and reconsideration of the property division and maintenance awards.

On remand in June 1984, and following the filing of an affidavit of prejudice, a different trial court heard the matter and issued amended findings of fact, conclusions of law and order for judgment. Both parties moved the court to amend its amended findings but the trial court denied both motions. Appellant then filed notice of appeal. Respondent timely filed notice of review.

We affirm in part, reverse in part and remand.

## FACTS

Appellant Dale Frederiksen and respondent Kathryn Frederiksen were married for approximately 28 years. During that time they raised eight children on their family farm near Morgan, Minnesota. In June 1982, the time of the first trial, only one child had not reached majority. Appellant was then 48 and respondent was 46.

After considering the parties' assets the trial court found the value of the marital estate to be $56,198.65 as of June 1982. The court found the value of the appellant's non-marital estate to be $265,248. Neither party contests these findings.

Respondent has experienced serious emotional and physical problems over many years. Apparently doctors believed she suffered from severe narcolepsy and depression as early as childhood. In the late 1950's after diagnosing narcolepsy they prescribed ritalin, an amphetamine, to which respondent gained an addiction. She also has been dependent upon another prescribed medication. Physicians treating her at the time of the June 1984 hearing, however, testified that she was not narcoleptic, since she took sedatives to fall asleep at night. Whether due to her chemical dependency or other emotional problems, respondent has been repeatedly hospitalized.

Respondent also has a long history of obesity. In 1971 she underwent a surgical stomach by-pass procedure. That procedure was reversed in 1981 after respondent suffered a catatonic seizure. At the hearing in June 1984 a physician testified that respondent still has an obesity problem.

Respondent testified that she wants to undergo a surgical stomach stapling procedure to help her reduce her weight. Her

physician testified that the stomach stapling procedure would help her reduce her weight and improve her health. Weight reduction, according to the physician, would also benefit respondent's emotional condition by improving her self image.

Respondent has no marketable skills. Appellant, on the other hand, continues to farm land his parents conveyed to him as well as acreage held by his second wife. His earnings have fluctuated widely. In 1982 he suffered substantial losses, reporting a $169,844 loss to the Internal Revenue Service. In 1983 he reported income of $77,107. His primary creditor, the local Production Credit Association, has limited his annual personal expenditures to $24,-000.

*The trial court decision*

The trial court vested title to the parties' farm, and all the farm machinery and related holdings in appellant. Other than personal property of no substantial value, the trial court did not award any of the parties' non-liquid assets to respondent. The trial court explained that it thought permanent spousal maintenance would replace such an award. The court nonetheless ordered appellant to pay the following amounts to respondent:

| | |
|---|---|
| Cash Settlement (to be paid in $5,000 installments) | $30,000.00 |
| Medical Expenses | 31,154.50 |
| Misc. Bills | 6,670.00 |
| Stomach Stapling operation | 10,000.00 |
| Attorney's Fees (to Lynch & Lynch) | ( 4,000.00) |
| TOTAL | $81,824.50 |

The court also ordered appellant to pay respondent $1,000 per month in spousal maintenance until July 1, 1986—when the trial court thought respondent might earn a small income through employment—$800.00 per month until May 1, 1996—when respondent qualifies for social security—and $600.00 per month thereafter until respondent dies or remarries or appellant dies. Appellant must pay additional amounts to maintain health insurance for respondent indefinitely. Appellant was awarded custody of the only minor child

remaining from the marriage and has supported him since the divorce decree. Finally, the trial court ordered that a trust be established to manage all of respondent's assets from the divorce decree, to invest her funds, and to pay her creditors.

## ISSUES

1. Did the trial court err in its division of the parties' property when it ordered appellant to pay post-dissolution decree debts incurred by respondent?

2. Did the trial court properly award $10,000 to respondent for the cost of a weight reduction surgical procedure?

3. Do the circumstances of this case justify the trial court's award of the entire marital estate and approximately $30,000 of appellant's non-marital assets to respondent?

4. Did the trial court abuse its discretion when it established the amount of spousal maintenance?

5. Was the trial court's order reducing permanent spousal maintenance in 1986 and 1996 an abuse of discretion?

6. Was the trial court's failure to order that spousal maintenance payments continue following appellant's death or respondent's remarriage an abuse of discretion?

7. Did the trial court err when it failed to create a lien upon appellant's farm in respondent's favor to secure payment of spousal maintenance?

8. Did the trial court abuse its discretion by failing to order that appellant will be liable for all of respondent's medical expenses should he default on his obligation to pay respondent's medical insurance?

9. Did the trial court err when it established a trust to administer respondent's financial affairs but failed to appoint a trustee or direct the trustee on the management of her financial problems and failed to set specific dates for appellant to pay into the trust portions of the property division designated for payment of respondent's debts?

10. Did the trial court's failure to order appellant to pay an auditor retained by respondent to provide evidence at trial constitute an abuse of discretion?

11. Did the trial court err when it refused to order appellant to pay respondent's former attorney's fees?

12. Did the trial court abuse its discretion when it ordered appellant to pay only part of the fees respondent's current attorney billed for trial and appeal?

## ANALYSIS

### 1. Respondent's post-decree expenses

The amended judgment orders appellant to pay specified debts which respondent incurred following the initial dissolution decree but before the second trial in June 1984. Those debts comprise $31,154.50 in medical expenses and $6,670.00 in miscellaneous bills.

In *Filkins v. Filkins*, 347 N.W.2d 526, 529 (Minn.Ct.App.1984) we held that marital debts may be apportioned between the parties under the same principle as marital property. The award here presents a different question, for the debts were incurred after the marriage, and are not marital debts. *See generally Ronnkvist v. Ronnkvist*, 331 N.W.2d 764, 766 (Minn. 1983) (holding that the marital estate is determined at the time of the dissolution decree, which for all practical purposes is the time of the dissolution hearing).

In its conclusions of law the court quite clearly indicates it awards respondent these funds in lieu of granting her a portion of the family farm. A trial court has broad discretion when dividing marital property and its decision should be affirmed unless there is no reasonable or acceptable basis in fact or principle. *DuBois v. DuBois*, 335 N.W.2d 503, 507 (Minn.1983). Since the court ordered appellant to pay respondent's debts as a part of its property division, it has simply earmarked some of the funds for that specific

purpose. Under the circumstances of this case, where the court found sufficient reason to create a trust for management of respondent's financial affairs, its designation of the purpose for those funds is not an abuse of discretion. *See infra* p. 778.

### 2. The cost of weight reduction surgery

The trial court also ordered appellant to pay the cost of a stomach stapling surgical procedure instead of awarding her an interest in the farm. At trial respondent testified that she expected the cost of that procedure to be approximately $10,-000.[1] One of her physicians recommended that she undergo the operation for her mental and physical health. We interpret this award to be a part of the property division which the trial court could, in its discretion, designate for that purpose. We do not agree with respondent, however, that the court should have awarded her $10,000 regardless of the cost of the surgery.

### 3. The amount of property awarded to respondent

Both appellant and respondent attack the amount of property awarded to respondent. Our legislature has provided that a court should divide the parties' assets considering:

all relevant factors including the length of the marriage, any prior marriage of a party, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, needs, opportunity for future acquisition of capital assets, and income of each party. The court shall also consider the contribution of each in the acquisition, preservation, depreciation or appreciation in the amount or value of the marital property, as well as the contribution of a spouse as a homemaker. It

---

1. Other testimony indicated that if the operation were delayed until 1985 respondent's insurance would cover a substantial portion of the cost.

shall be conclusively presumed that each spouse made a substantial contribution to the acquisition of income and property while they were living together as husband and wife. * * *

Minn.Stat. § 518.58 (1982). As indicated *supra*, the trial court has broad discretion to divide the parties' property. Each case must be judged on its particular facts. *Lenzmeier v. Lenzmeier*, 304 Minn. 568, 571, 231 N.W.2d 71, 74 (1975).

In this instance the trial court found the parties' marital estate had a value of approximately $56,000. The property awarded respondent, including the amounts designated for payment of her debts and her stomach stapling surgery, totals nearly $82,000. Thus the trial court awarded respondent the entire marital estate, as well as approximately $26,000 of appellant's non-marital property.

■ In certain circumstances, an award of non-marital property is permitted:

If the court finds that either spouse's resources or property, including his portion of the marital property * * * are so inadequate as to work an unfair hardship, considering all relevant circumstances, the court may, in addition to the marital property, apportion up to one-half of the [non-marital property]. If the court apportions property other than marital property, it shall make findings in support of the apportionment. The findings shall be based on all relevant factors, including the length of the marriage, any prior marriage of a party, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, needs, and opportunity for future acquisition of capital assets and income of each party. * * *

Minn.Stat. § 518.58.

■ In this exceptional case the trial court found that the entire marital estate was insufficient for respondent's needs. Given her substantial debts and her emotional problems, her lack of salable skills, her age and the minimal financial resources, as well as the likelihood that she will incur future medical expenses, this conclusion is justified by the evidence. We hold that the court properly exercised its discretion to award her part of appellant's non-marital estate.

■ Respondent contends that the court's award is insufficient and that it should have awarded her an additional $34,-000 of appellant's non-marital property as permitted by Minn.Stat. § 518.58. While respondent may face financial difficulties under this property division, the apportionment also places substantial burdens upon appellant. We cannot conclude that the trial court's apportionment creates such an unfair hardship that it constitutes an abuse of discretion. Appellant's principal asset is his farm, which is also his source of income. If he is required to liquidate his farm, he will lose the income he needs to support himself and to pay respondent's spousal maintenance.

### 4. Amount of spousal maintenance

Rather than award respondent more property, the trial court granted her permanent spousal maintenance, subject to reductions in 1986 and 1996. Appellant claims that the initial $1,000 per month maintenance payments, combined with the sums he must pay as part of the property division, burdens him with an unfair hardship.

■ Trial courts have wide discretion to make spousal maintenance awards. *Erlandson v. Erlandson*, 318 N.W.2d 36, 38 (Minn.1982). When making an award the court should balance the dependent spouse's needs and ability to meet those needs against the supporting spouse's financial condition and needs. *Krick v. Krick*, 349 N.W.2d 350, 352 (Minn.Ct.App. 1984). The standard of review is whether the trial court abused its discretion. *Id.* Although we recognize that the overall impact of the dissolution decree places a substantial burden upon appellant, the payments still may not entirely meet respondent's needs. Under these circumstances we must rest our decision in the trial court's discretion.

### 5. *Future reductions in spousal maintenance*

Respondent argues that the trial court erred by reducing her spousal maintenance in 1986 and in 1996. The trial court ordered a $200 per month reduction in 1986 to give incentive to respondent to attempt to find some type of employment in the future. As indicated above, trial courts have broad discretion when establishing spousal maintenance. In this case, however, we find the evidence shows respondent's employment prospects are less than promising, and the trial court's expectation that she will generate for herself $200 net monthly income by 1986 is too speculative. Although planned reductions in maintenance may in other cases be an appropriate means of providing employment incentives, here the modification procedures established in Minn.Stat. 518.64 (1984) are the proper means of reducing maintenance in the event respondent becomes more self-sufficient.

The trial court also ordered a $200 reduction in 1996 because respondent will then qualify for social security payments. The supreme court has indicated that anticipated social security payments may properly be considered as future income when determining spousal maintenance payments. *Taylor v. Taylor,* 329 N.W.2d 795, 799 (Minn.1983); *Elliott v. Elliott,* 274 N.W.2d 75, 77 (Minn.1978). *Compare Swanstrom v. Swanstrom,* 359 N.W.2d 634, 639 (Minn.Ct.App.1984) (holding failure to consider future social security payments was not an abuse of discretion). While the trial court properly considered respondent's future social security income, we hold its automatic $200 per month reduction in her spousal maintenance is premature. Given the uncertainties in the benefits she will receive and the changes that may occur in appellant's income when he too reaches retirement age, we hold that the trial court should have reserved this question for disposition upon an appropriate motion for modification.

### 6. *Continuation of spousal maintenance after appellant's death or respondent's remarriage*

The trial court ordered that spousal maintenance continue "until the death of the respondent or until further order of this court." Minn.Stat. § 518.64 subd. 3 (1982) provides:

Unless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance.

Neither party contests the trial court's finding that permanent maintenance was justified by the substantial likelihood that respondent would not become completely self-supporting. Respondent, however, contends the trial court erred by not declaring that maintenance continues when she remarries or appellant dies.

Respondent cites no authority supporting an entitlement to continued spousal maintenance upon her remarriage. We hold that the trial court in its discretion properly chose not to extend maintenance beyond her remarriage.

Respondent's argument for extension of maintenance beyond appellant's death presents a more difficult issue. In *O'Brien v. O'Brien,* 343 N.W.2d 850 (Minn. 1984) the trial court awarded permanent maintenance to a 49 year-old woman who had a high school education but no employment skills. She was also awarded custody of Melissa, the parties' 16 year-old daughter who was severely afflicted with cerebral palsy. The trial court in that case made no provision that the maintenance payments continue beyond the husband's death. The supreme court stated:

Presumably, the trial court [award of permanent maintenance] was motivated by a recognition that Mrs. O'Brien's employment prospects are poor and unlikely to improve, given her age, education, vocational experience, and, most importantly, the time and care she will have to give Melissa. Although this situation will not improve, spousal maintenance, as provid-

ed in the dissolution decree, terminates at Mr. O'Brien's death. "[I]n the exceptional case, the reasons which justify granting permanent alimony * * * also justify the securing of that alimony." *Arundel v. Arundel,* 281 N.W.2d 663, 667 (Minn.1979). We think this is one of those exceptional instances where there should be some life insurance on the husband's life to afford the wife a measure of security for loss of maintenance in the event her husband should predecease her. Because the husband is responsible for maintenance, so should he bear the cost of insurance protection for that maintenance.

*Id.* at 853. The court then remanded the matter to the trial court for consideration of the terms of the life insurance.

██ We hold that this case is also one of those exceptional cases where the wife needs some security that her maintenance payments will not suddenly cease because of an event beyond her control. The solution adopted by the *O'Brien* court—that appellant obtain life insurance—can best meet respondent's needs. Because the record reveals no information on appellant's insurability or the costs of that insurance, we remand this issue to the trial court's discretion to determine whether appellant is able to provide such insurance without imposing an unfair burden upon him.

### 7. Priority of lien for spousal maintenance

██ Respondent also attacks the trial court's failure to better secure payment of spousal maintenance during appellant's life. Although the trial court ordered that a lien would attach to appellant's farm for any delinquent spousal maintenance payments, respondent asserts that the court should have attached the lien immediately to give it priority over any encumbrances that may attach. This question again is one addressed to the trial court's discretion. Even though respondent would gain added security if her lien were prior to other creditor's claims, the trial court may

well have believed that lien would inhibit appellant's ability to obtain financing for his farming operations.

### 8. Liability for medical expenses upon failure to provide medical insurance

██ Respondent claims the trial court erred when it failed to provide that appellant will be liable for her medical expenses should he fail to pay for her medical insurance as ordered by the court. We hold that the trial court properly denied respondent's request. The appropriate remedy for appellant's failure to comply with the decree can be determined upon his default.

### 9. Management of respondent's finances through a trust

The trial court ordered creation of a trust to manage respondent's assets and to attend to her debts. In an affidavit attached to respondent's motion for amended findings, respondent's attorney advised the court that the bank employee who had managed respondent's financial matters did not want to act as trustee. Her attorney also indicated that respondent then had insufficient funds to pay her debts, or to provide for herself. In order to attempt to satisfy her creditors, respondent's attorney requested the court to modify its order to provide specific dates by which appellant must pay those parts of the property division earmarked for her debts. The attorney also requested more specific instructions from the court on the appointment of a trustee and the management of respondent's affairs through that trust. The court denied those requests.

The trial court created the trust under the power granted it in Minn.Stat. § 518.61 (1982):

(a) Upon its own motion or upon motion of either party, the court may appoint a trustee, when it is deemed expedient, to receive any money ordered to be paid as maintenance or support money for remittance to the person entitled to receive the payments. The trustee may also receive property which is part of an award under section 518.58, upon trust to invest the

same, and pay over the income in the manner the court directs, or to pay over the principal sum in the proportions and at the times the court orders. The court shall have regard in all cases to the situation and circumstances of the recipient, and the children, if there are any. * * *

The trial court wisely exercised its discretion when it decided to create a trust to manage respondent's affairs. However, when a court decides to create a trust under section 518.61, it should appoint a trustee to administer that trust. The court's failure to do so requires us to remand this matter for that action.

Before any trustee may fulfill his duty of orderly and responsibly managing respondent's finances, he will need further direction and assistance from the trial court. The trial court implicitly directed that appellant pay funds to the trustee, as a part of the property settlement, to be used to pay respondent's creditors. Before the trust may function as intended, the court must establish dates for payments into the trust and direct the trustee on how he should disburse those funds.

### 10. Accountant's fees

When the district court appeal panel remanded this case to the trial court for amended findings and a new hearing, it stated that respondent should retain an auditor to assess appellant's financial affairs and estimate his net worth. Respondent hired an accountant, who audited appellant and testified at the hearing. The trial court found the testimony of no value and for that reason denied respondent's request that appellant be ordered to pay the accountant's fee.

This fee falls within the category of trial costs. Trial courts are accorded discretion to allow litigation expenses. Minn.Stat. § 518.14 (1982). Since the trial court's refusal to assess that expense is not an abuse of its discretion, it is affirmed. See Peterson v. Peterson, 308 Minn. 365, 242 N.W.2d 103 (1976).

### 11. Respondent's former attorney's claim for fees

Respondent requested the trial court to assess $8,731.22 against appellant for attorney's fees she incurred with the law firm that represented her until some time before the first trial. Both trial courts in the first and second hearings found the fees grossly excessive and therefore denied the request. Respondent now requests an award of at least that firm's costs of $1,329.97 plus partial reimbursement for their time.

Awarding attorney's fees and expenses at trial is, of course, a matter within the trial court's broad discretion. Moberg v. Moberg, 350 N.W.2d 421, 423 (Minn.Ct.App.1984). The standard for determining whether an award is appropriate is a party's need for financial assistance to enable him to protect his rights in dissolution proceedings. Minn.Stat. § 518.14. See Abuzzahab v. Abuzzahab, 359 N.W.2d 329, 333 (Minn.Ct.App.1984).

The trial court concluded the claim for attorney's fees was grossly excessive. That conclusion alone does not justify denial of the entire claim for attorney's fees. If the standard in Minn.Stat. § 518.14 is met, then some part of the claim may be valid. We therefore reverse the denial of attorney's fees and remand to the trial court for a determination of need under Minn.Stat. § 518.14. If the court finds an award is justified, then it may limit the award to that amount it believes will fairly compensate respondent's former attorney.

### 12. Other attorney's fees

Respondent requests attorney's fees for the costs of her appeal, for the costs of her motion for amended findings, and for approximately $1,000 which she requested from the trial court but did not receive. The trial court did award respondent $4,000 of the approximately $5,000 in attorney's fees incurred through the time of trial.

Again, the trial court's award of attorney's fees should not be disturbed absent an abuse of discretion. Id. We

hold that the trial court's distribution of responsibility for attorney's fees was proper. This court has similar discretion to award attorney's fees incurred during an appeal. *Solon v. Solon,* 255 N.W.2d 395, 397 (Minn.1977). We grant respondent's request and order appellant to pay $400 for respondent's attorney's fees on appeal.

## DECISION

We reverse the trial court's reduction of spousal maintenance in future years. We remand to the trial court the issue whether spousal maintenance should be secured against termination by appellant's death. We reverse the trial court's refusal to establish dates by which appellant should pay those parts of the property settlement designated for payment of respondent's debts and its refusal to appoint a trustee and to provide further guidance on the administration of the trust. We remand those matters for proceedings not inconsistent with this opinion. We reverse and remand the denial of an award of legal fees for respondent's former attorney. In all other respects we affirm the judgment entered by the trial court.