In re the Marriage of Dale E. **ERDAHL, Petitioner, Respondent,**

v.

**Marion ERDAHL, Appellant.**

No. C7–85–1679.

Court of Appeals of Minnesota.

April 8, 1986.

Elton A. Kuderer, Erickson, Zierke, Kuderer, Madsen & Wollschlager, P.A., Fairmont, for respondent.

D. Gerald Wilhelm, Wilhelm, Walker & Viesselman, P.A., Fairmont, for appellant.

Heard, considered and decided by HUSPENI, P.J., and FOLEY and NIERENGARTEN, JJ.

## OPINION

FOLEY, Judge.

Marion Erdahl appeals from a July 16, 1985 dissolution judgment and from an August 6, 1985 order denying her alternative motions for amended findings or for a new trial. She further appeals that portion of the order reducing her permanent maintenance award by allowing respondent a credit for future social security payments to which she would have been entitled. An amended judgment incorporating the order was also entered on August 6, 1985. Appellant claims that the trial court erred when it determined that farm real estate was nonmarital property. Alternatively, she claims that if this characterization was proper, it was error to deny invasion of the asset when sufficient hardship was demonstrated. We affirm in part and reverse in part.

## FACTS

Marion and Dale Erdahl were married for 32 years. Appellant was 53 years old at the time of trial and respondent was 54 years old. After the marriage, the couple moved to respondent's family farm near Blue Earth, Minnesota, where they remained until 1977. The couple's children were both emancipated at the time of trial.

During the course of the marriage, appellant fulfilled the role of a traditional homemaker. Respondent continued to operate the farm and served a four-year term as a local representative to the Minnesota House of Representatives. In 1976, he was hired by the Minnesota Department of Economic Security, where he remained at the time of trial. It was undisputed that the Erdahl farm was the primary source of the couple's income.

The Erdahls ceased active farming operations in 1977 and moved to Fairmont, Minnesota, where they continued to live until their separation in April 1984. Both parties also returned to college. Respondent earned his degree in 1984. At trial, appellant was not enrolled in classes but testified that she planned to complete the re-

quirements for a degree in home economics over the next four years.

At trial, much of the testimony centered on the ownership of two parcels of land. The first parcel (Parcel A), approximately 86 acres, was deeded to respondent during the marriage by his father, who was deceased at the time of trial. Appellant testified that both parties were intended as donees of the property. Respondent testified his father intended to deed the property to him alone. The second parcel (Parcel B), approximately 154 acres, was devised to respondent under his father's will. Appellant was named as a contingent beneficiary in the event that respondent predeceased his father. She claimed at trial that her status as a contingent beneficiary reflected the senior Erdahl's intent that she take an equal interest in the property.

The evidence also disclosed that the Erdahls were joint owners of a one-fifth interest in the Bolstad Corporation, a Montana farm corporation owned entirely by appellant's family. The stock, received as a gift, produced dividends between $2,500 and $5,000 per year.

The trial court further found that appellant's earning capacity was limited to $6,000 per year and that the time and expense necessary to acquire sufficient education to maintain her current standard of living was not practical or economically feasible. As a result, the trial court awarded her $500 per month in permanent maintenance. The trial court also determined that respondent's gross income from wages was $21,000 per year and that both parcels of farm property belong solely to respondent as nonmarital property—Parcel A acquired by gift and Parcel B acquired by inheritance. In its amended findings and conclusions of law, the trial court granted respondent a credit against the monthly maintenance award for any benefits appellant-wife would receive from respondent's social security account upon retirement.

## ISSUES

1. Did the trial court err as a matter of law when it awarded respondent the farm real estate as nonmarital property?

2. If the farmland was nonmarital property, did the trial court err when it failed to invade the assets to avoid unfair hardship to appellant?

3. Did the trial court err when it allowed respondent to offset permanent maintenance to the extent appellant receives payments from respondent's social security account when no evidence was presented as to the amount of these payments?

## ANALYSIS

1. Determination of whether a particular item of property is marital or nonmarital is a question of law and an appellate court need not defer to the trial court's decision. *Van De Loo v. Van De Loo*, 346 N.W.2d 173, 175 (Minn.Ct.App. 1984). All property acquired during the marriage is presumed to be marital property. Minn.Stat. § 518.54, subd. 5 (1984). When one spouse acquires property by gift, bequest, devise or inheritance from a third party, it is specifically designated as nonmarital property. *See* Minn. Stat. § 518.54, subd. 5(a) (1984). The party claiming a nonmarital classification must produce demonstrable proof to overcome the marital property presumption. *See Van De Loo*, 346 N.W.2d at 177.

The parties agree that Parcel A was properly characterized as a gift from respondent's father. However, they disagree as to whether the gift was to both parties or just to respondent. We cannot say that the trial court erred as a matter of law when it determined that the property was given to respondent alone and thus constituted nonmarital property. Parcel A had remained with the Erdahl family for a number of years. Respondent and his father farmed this land together for over 20 years. The mere fact that profits from the land were used to benefit both parties is not dispositive of the classification issue. *See Kottke v. Kottke*, 353 N.W.2d 633, 636 (Minn.Ct.App.1984), *pet. for rev. denied*, (Minn. Dec. 20, 1984).

The trial court also determined that respondent inherited Parcel B under his father's will. Appellant contends that her status as a contingent beneficiary combined with her close relationship with respondent's parents and her care during their respective illnesses establishes that Parcel B was intended to be taken as marital property. This argument ignores the plain wording of the will. Under the terms of the will, appellant was to receive one-third of the estate only if respondent predeceased his father or if both died simultaneously. If respondent's father had intended to devise Parcel B as marital property, he could have designated appellant as a joint tenant. Appellant's status as a *contingent* beneficiary is precisely the reason a contrary intent is dictated.

2. Division of property under Minn.Stat. § 518.58 (1984) must be "just and equitable" but not necessarily equal. *Riley v. Riley*, 369 N.W.2d 40, 43 (Minn.Ct.App. 1985), *pet. for rev. denied*, (Minn. Aug. 29, 1985). Unless a trial court has clearly abused its discretion, such a division will not be disturbed on appeal. *Taylor v. Taylor*, 329 N.W.2d 795, 797 (Minn.1983).

We find no clear abuse of discretion in this case. The trial court divided the property as follows: Appellant received $157,354 in total marital assets including the homestead; respondent received $19,748 in total marital assets plus $331,000 of nonmarital property or a total of $350,748. Appellant argues that even if the farmland was properly characterized as nonmarital, the trial court erred when it failed to invade the assets to avoid demonstrated hardship. *See* Minn.Stat. § 518.58; *Rosenberg v. Rosenberg*, 379 N.W.2d 580, 584 (Minn.Ct.App.1985), *pet. for rev. denied*, (Minn. Feb. 19, 1986).

The statutory factors to be considered by a trial court in determining whether one spouse's resources are so inadequate as to support invasion of nonmarital assets include: length of the marriage, the age, health, station, occupation, amount and sources of income, vocational skills, employability, liabilities, needs and opportunity for future acquisitions of capital assets and income of each party. *See* Minn. Stat. § 518.58.

*Employability*

Appellant devotes much of her brief to her prospects for employment. It is clear, however, that the trial court recognized this factor when it awarded her permanent maintenance:

The [appellant] lacks sufficient marital property apportioned to her to provide for her reasonable needs. She is unable to support herself through appropriate employment. Her marriage is of 33 years duration. The [appellant] is 53 years of age. Her experience in the workplace is minimal and she has no job skills or experience to sell. Because of her age, the time and expense of rehabilitative training would not be economical. This is true especially when looking at employment opportunities and length of employment because of [appellant]'s age.

[Respondent] is employed with substantial income and receives rentals also. He can maintain his standard of living while contributing maintenance of $500.00 to permit [appellant] to provide for her reasonable needs with her other income and wages from unskilled employment she may be able to secure.

*Sources of Income/Acquisition of Capital Assets*

Appellant argues that the property division is disproportionate since any nonmarital property respondent received formed the bulk of income-producing property. It is true that respondent receives $26,000 per year rental income from farm property on top of his yearly wages, however, we do not find this argument persuasive in view of the fact that appellant received almost 89% of total marital assets. We also note that appellant has access to an additional $200 per month by renting the basement of the homestead as an apartment, as had been done in the past.

*Relative Need of the Parties*

Appellant submitted monthly expenses of $1,347.06 and testified that her educational expenses over the next four years would total approximately $10,400. Neither of these figures were supported by documentation. She asserts that she is entitled to a share of nonmarital property as was the wife in *Frederiksen v. Frederiksen,* 368 N.W.2d 769 (Minn.Ct.App.1985). In *Frederiksen,* this court upheld a partial award of the husband's nonmarital property to the wife even though she had been awarded virtually all the couple's marital property:

> In this exceptional case the trial court found that the entire marital estate was insufficient for respondent's needs. Given her substantial debts and her emotional problems, her lack of salable skills, her age [48 years old] and the minimal financial resources, as well as the likelihood that she will incur future medical expenses, this conclusion is justified by the evidence.

*Id.* at 775.

Appellant's devotion to her family and support for respondent's career changes at the expense of her own professional aspirations is amply demonstrated by the record. Admirable as this may be, however, it is not the factual scenario presented in *Frederiksen,* nor is it the sort of hardship envisioned by Minn.Stat. § 518.58. Here, the trial court denied appellant a share of respondent's nonmarital property, stating:

> The Court cannot find that there is an undue hardship on [appellant] considering she has marital assets valued at $100,000.00 assigned to her. She has income from these assets of $500.00 per month. She has earning capacity of at least $600.00 per month from unskilled labor. She is to receive maintenance of $500.00 per month.

The trial court's conclusion that appellant did not sustain undue hardship cannot be deemed clearly erroneous.

■ 3. In *Swanstrom v. Swanstrom,* 359 N.W.2d 634, 639 (Minn.Ct.App.1984), this court held that the trial court did not abuse its discretion when it failed to consider social security income in setting the amount of maintenance. Remanding the case on other grounds, we stated:

> [T]he court may also consider, within its discretion *and if it is raised by either party,* the effect of future receipt of Social Security on the award of maintenance.

*Id.* (emphasis supplied).

In *Elliott v. Elliott,* 274 N.W.2d 75 (Minn.1978), evidence was presented at trial establishing that the husband's social security base was high enough to ensure maximum payments if he waited until retirement to claim them. The supreme court stated it is within the trial court's discretion to consider social security benefits in determining the wife's alimony award. *Id.* at 78. In the present case, the trial court found:

> Because [appellant] can receive benefits from [respondent]'s social security upon retirement, a credit for maintenance payments will be granted because of any receipts by [appellant] solely because of [respondent]'s social security account payments to [appellant].

Accordingly, it held:

> 8. That the [respondent] shall pay to the [appellant] the sum of $500.00 per month maintenance. The right to collect this maintenance is specifically limited by the death of either party or the remarriage of the [appellant]. The [respondent] may re-open the maintenance awarded based on substantial change in his circumstances. [Respondent] may claim credit for payment toward the maintenance awarded for any sums received or receivable by [appellant] solely because of [respondent]'s social security account. This would mean the amount survivor's benefits exceeded retiree's primary benefits.

Unlike *Elliott,* the record here is completely devoid of any reference to social security payments or the probable amount of such payments. The issue was not raised by either party but rather *sua*

*sponte* by the court. It is well established that a trial court's discretion "is not unlimited and should be supported by clear documentary or testimonial evidence or by comprehensive findings issued by the court." *Hein v. Hein*, 366 N.W.2d 646, 650 (Minn. Ct.App.1985) (quoting *Ronnkvist v. Ronnkvist*, 331 N.W.2d 764, 766 (Minn. 1983)). Accordingly, we reverse on this issue.

## DECISION

The trial court did not err as a matter of law when it awarded respondent two parcels of farmland as nonmarital property. The trial court's refusal to invade nonmarital assets did not constitute an abuse of discretion. The trial court erred in offsetting permanent maintenance by the amount appellant was entitled to receive under respondent's social security account when no evidence was presented by either party as to the amount of these payments.

Affirmed in part, reversed in part.