**In re the Marriage of Dorothy E. KRUSCHEL, Respondent,**

v.

**William E. KRUSCHEL, Appellant.**

No. C9–87–1803.

Court of Appeals of Minnesota.

Feb. 16, 1988.

Gregory P. Seamon, St. Paul, for respondent.

Thomas B. Schway, St. Paul, for appellant.

Heard, considered and decided by WOZNIAK, C.J., and LANSING and NORTON, JJ.

## OPINION

LANSING, Judge.

Upon retirement, appellant William Kruschel moved to modify the spousal maintenance provision of a dissolution decree entered five years earlier while he was still employed. He appeals the trial court's denial of that motion. We reverse and remand.

### FACTS

In 1982, the parties' 34–year marriage was dissolved by a decree which required William Kruschel to pay Dorothy Kruschel $1,000 per month spousal maintenance to continue until the remarriage of Dorothy Kruschel, the death of either party, or any other material change in circumstances. The decree also effected a roughly equal division of the parties' marital property: William Kruschel received real and personal property worth around $83,882, including sole right to and interest in his pension plan, then valued at $61,312; Dorothy Kruschel received real and personal property worth approximately $81,275, including the parties' homestead, which had a net equity of $61,175.

In May 1987, at age 62, William Kruschel voluntarily retired from his employment as an engineer for 3M. While at 3M, he had

earned a monthly base salary of $3,380 plus profit sharing, for a net monthly income of about $1,981. After retirement, his monthly income consists of $1,900 in pension benefits and $671 from social security, for a net monthly income of $2,045. In addition, William Kruschel has at all relevant times received veteran's disability benefits of $386 per month. Now age 62, Dorothy Kruschel is unemployed and, aside from maintenance payments, her current monthly income is limited to $117 in social security benefits. Physical and emotional problems make her future employment unlikely.

After retiring, William Kruschel moved to modify the maintenance award, arguing that Dorothy Kruschel's recent sale of her house and some stock had left her with substantial cash assets; that his monthly expenses had increased; that Dorothy Kruschel had become eligible for social security payments and her monthly expenses had decreased; and that requiring him to pay maintenance out of his pension benefits was inconsistent with the award to him of sole right to the pension.

Although the trial court adopted William Kruschel's assertions on changes in income and expenses, it nonetheless concluded that he had failed to meet his burden of proving that there had been a change of circumstances which would make the original maintenance award unreasonable and unfair. William Kruschel appeals.

### ISSUE

■ Did the trial court abuse its discretion in determining there had been no substantial change of circumstances which would make the original maintenance award unreasonable or unfair?

### ANALYSIS

The maintenance provisions of a dissolution decree

> may be modified upon a showing of * * * (1) substantially increased or decreased earnings of a party; [or] (2) substantially increased or decreased need of a party * * * which makes the terms unreasonable and unfair. * * *

Minn.Stat. § 518.64, subd. 2 (1986). An award of maintenance should be modified only upon clear proof of facts showing a substantial change of circumstances from those existing at the time of the dissolution. *Peterson v. Peterson*, 304 Minn. 578, 580, 231 N.W.2d 85, 86 (1975); *Wiese v. Wiese*, 295 N.W.2d 371, 372 (Minn.1980). A trial court's discretion to modify an award should be exercised cautiously, and this court will not interfere with the exercise of that discretion unless it has been abused. *Abuzzahab v. Abuzzahab*, 359 N.W.2d 329, 332 (Minn.Ct.App.1984).

If only the increase or decrease in cash flow and expenses were considered, those changes would not be so substantial as to make refusal to modify an abuse of discretion: William Kruschel's monthly net receipts actually increased slightly, from $1,981 to $2,045 (excluding veteran's benefits), while Dorothy Kruschel remains unemployed and receives only $117 per month social security. William Kruschel's monthly expenses have increased from $1,523 to $1,680, and Dorothy Kruschel's monthly expenses have decreased from $1,701 to $1,405. However, William Kruschel also argues that it is error to require him to pay maintenance out of his pension benefits, because he was awarded sole interest in his pension in the original property distribution.

■ Pension benefits are property to be considered by the trial court in dividing property or awarding maintenance. *Taylor v. Taylor*, 329 N.W.2d 795, 798 (Minn. 1983). Because the value of a vested pension plan is based entirely on the future stream of income it represents, William Kruschel argues that the effect of requiring him to pay maintenance out of his pension benefits is to modify the property award after the time for appeal of that award has expired. *See* Minn.Stat. § 518.64, subd. 2 (1986) ("all divisions of real and personal property provided by section 518.58 shall be final"); *Arzt v. Arzt*, 361 N.W.2d 135, 136–37 (Minn.Ct.App.1985) (trial court does not have authority to modify property division after time for appeal of original decree has expired).

Although no Minnesota appellate court has squarely addressed this issue, there is support for William Kruschel's argument that the pension should be viewed as property or income, but not both. For example, in *Faus v. Faus,* 319 N.W.2d 408 (Minn. 1982), the trial court awarded the respondent maintenance until the appellant retired, and gave her a 50 percent interest in future pension benefits which had vested during the marriage. In affirming this aspect of the decree, the supreme court noted that although the respondent would continue to receive payments after the appellant's retirement, those payments would actually be "in recognition of her interest in appellant's pension benefits," rather than maintenance. *Id.* at 413.

Other cases confirm this distinction. *See Elliott v. Elliott,* 274 N.W.2d 75, 78 (Minn. 1978) (pension rights are to be considered as property rights and social security benefits as income in determining property division and alimony); *Sward v. Sward,* 410 N.W.2d 442, 444 (Minn Ct.App.1987), *pet. for review granted* (Minn. Sept. 30, 1987) (although military disability benefits may not be divided as a marital asset, they can be considered as income in setting maintenance awards); *O'Brien v. O'Brien,* 343 N.W.2d 850, 852 (Minn.1984) (if the valuation of property awarded is based on the capitalization of an income stream, that income is properly excluded in determining maintenance).

Finally, in *Hellerstedt v. Hellerstedt,* 409 N.W.2d 65 (Minn.Ct.App.1987), *pet. for review denied* (Minn. Sept. 30, 1987), this court upheld an order for temporary maintenance which apparently had to be paid from pension benefits previously awarded to the appellant as part of his property award. In affirming, the court relied on the fact that the maintenance order required that the temporary payments be repaid with interest, implying that the maintenance would otherwise have improperly modified the property award. *Id.* at 67.

Addressing a similar issue, the Wisconsin Court of Appeals has held that the trial court abused its discretion in failing to exclude pension benefits from income for maintenance purposes until the total benefits received equal the value of the fund awarded in the property division. *Pelot v. Pelot,* 116 Wis.2d 339, 342–43, 342 N.W.2d 64, 67 (Wis.App.1983). Although the court recognized that the pension fund, considered as property, could have been considered in awarding maintenance, it nonetheless concluded that it was "arbitrary" to consider the pension both as property for property division purposes and also as income for maintenance purposes. *Id.*

Dorothy Kruschel argues that the motion to modify was properly denied because the same factors are to be considered in dividing property and awarding maintenance, and the court which entered the original decree knew that William Kruschel would be retiring soon and made its decree in light of that knowledge. No language in the original dissolution decree supports the argument that anything other than a roughly equivalent division of marital assets was intended. If William Kruschel's pension benefits are considered equivalent to employment income for maintenance purposes, then Dorothy Kruschel will in fact receive a greater proportion of the marital assets. If, as Dorothy Kruschel appears to suggest, the trial court intended to give her an interest in the pension benefits, it could have done so explicitly. *See Faus,* 319 N.W.2d at 413.

■ Although William Kruschel's monthly cash receipts have not changed substantially since his retirement, those receipts are now derived primarily from property rights previously awarded to him. This shift constitutes a substantial change of circumstances. To the extent that the original maintenance award would require William Kruschel to deplete his property award to pay maintenance, it is subject to modification under Minn.Stat. § 518.64, subd. 2.

■ In determining the propriety and amount of continued maintenance, the trial court must consider Dorothy Kruschel's total financial resources, including any income from her own marital property award, Minn.Stat. § 518.552, subds. 1(a) and 2(a). Conjointly, William Kruschel's

total financial resources must be considered in evaluating his ability to meet his own needs. Minn.Stat. § 518.552, subd. 2(g). If the court determines that William Kruschel has the financial resources to meet his own needs and Dorothy Kruschel does not, it may order continued maintenance out of William Kruschel's non-pension income. However, maintenance may not be ordered to be paid from William Kruschel's pension payments until he has received from the pension an amount equivalent to its value as determined in the original property distribution.

## DECISION

On remand, William Kruschel's pension benefits should not be used as income for maintenance purposes; however, his property interest in the pension may, along with Dorothy Kruschel's own assets, be considered in determining the propriety or amount of future maintenance payable from non-pension income.

Reversed and remanded.

WOZNIAK, Chief Judge (dissenting).

I agree pension benefits originally awarded in a property distribution may not subsequently be treated as income in modifying a maintenance award. I disagree with the majority's ruling, which allows a future maintenance award from monthly pension benefits once William has received payments in the amount of the $61,312 present value assigned at the time of the property division. This decision not only lacks support in the law, but unnecessarily decides an issue not presently before this court, and invites the parties to continue their struggle over William's original property award.

The majority's conclusion, while acknowledging the finality of property distributions, concludes William's property settlement, his pension, may be used to determine if he can be forced to pay all of his other income in maintenance. This ruling is at odds with the underlying notion of the finality of property settlements. I therefore dissent.

## I.

### Additional Facts

In 1982, William Kruschel was ordered to pay $1,000 a month maintenance (in addition to premiums on two life insurance policies) to Dorothy Kruschel. Maintenance was awarded until remarriage, death, or "*any material change in circumstances.*" (Emphasis added.)

In its determination of the property division, the trial court carefully outlined the value of the parties' marital property, reflecting "its intention to divide the assets equally between the parties." *Taylor v. Taylor*, 329 N.W.2d 795, 798 (Minn.1983). Dorothy was awarded personal and real property in excess of $81,000, including the parties' homestead (equity of $61,175). William was awarded property in excess of $83,000, $61,312 of which was the present value of the future payments under his pension plan. His net monthly income at the time of the divorce was $1,981.22, plus his partial veteran's disability pension.

The trial court further found Dorothy had the ability to work on a part-time basis. She has not worked since the dissolution.

William recently retired. He receives $1,900 a month pension benefits (100% taxable) and $671 social security (50% of which is taxable). His net income is $2,045 per month. At issue is what portion of his net monthly income may properly be considered when determining maintenance.

Dorothy's monthly social security benefit is $117. The trial court found her monthly living expenses have decreased over 17% since 1982, from $1,701 to $1,405, while William's increased over 10%, from $1,523 to $1,680.

It appears that Dorothy has received $95,000 in cash from the sale of the home and some marital stock awarded to her as part of the property settlement. The present disposition of these funds is not apparent from the record. The trial court made no findings regarding the amount of income she receives from these assets.

## II.

A. Minnesota law clearly holds that property divisions are final. Under Minn. Stat. § 518.64, subd. 2 (1986), all divisions of real and personal property provided by Minn.Stat. § 518.58 are final, and may not be modified after the time for appeal of the original decree has expired. *Arzt v. Arzt*, 361 N.W.2d 135, 136–37 (Minn.Ct.App. 1985).

The majority impermissibly has ruled this property division is not final, or is final for only a short period of time. The amount to be paid in maintenance will be based on income William receives from his property settlement, whether it is labeled a property interest or income. The practical result of the majority's decision is that Dorothy now will receive a larger portion of the property settlement than originally was intended by the trial court.

There simply is no way William could have known at the time of the dissolution that he would one day be forced to pay maintenance based on his interest in the property settlement. Unlike the spouse in *Faus v. Faus*, 319 N.W.2d 408 (Minn.1982), William was not on notice that a portion of the property settlement would be used in determining the support obligation. Presumably, had he known of this result, William would have insisted upon a different property settlement or appealed the original division.

B. Income and property awarded in the original distribution are two distinct entities for maintenance purposes. In *Taylor v. Taylor*, 329 N.W.2d 795, 798 (Minn.1983), the supreme court stated that "pension benefits are property to be considered by the trial court in exercising its discretion in a property division *or* award of maintenance." (Emphasis added.) The trial court in the original action could have treated the pension as future income and awarded Dorothy a future share of that income as maintenance, *or* it could have treated the pension as property (valued as the present value of the stream of future income) and awarded it to William with an offset of other property to Dorothy. *Taylor* clearly implies pension benefits originally awarded in a property disposition may not be considered in awarding maintenance.[1] The trial court chose to include the pension in the property portion of the original dissolution, and now is without jurisdiction to modify that decision.

If the trial court intended to give her an interest in the pension benefits, it should have done so explicitly. *See Faus*, 319 N.W.2d at 413. The majority, while agreeing with this proposition, leaves open for future consideration the income from William's pension in any future maintenance modification. This creates a de facto amendment of the earlier property division. It does indirectly what cannot be done directly.

Dorothy has had the continued and exclusive enjoyment of the property received in the earlier settlement. After partial sale and receipt of cash, she now enjoys the income derived therefrom.

William, on the other hand, has just begun receiving the fruits of the pension, but only will be entitled to exclusive enjoyment of that property until early 1990. William

---

1. Additional Minnesota case law supports the separate and distinct treatment to be afforded property and income when marital property is being divided and maintenance is being determined. In *Faus*, the trial court awarded the respondent maintenance until the appellant retired, and gave her a 50% interest in future pension benefits (found by the court to be marital property). In affirming, the supreme court noted that although the respondent would continue to receive payments after appellant's retirement, those payments would actually be "in recognition of her interest in appellant's pension benefits," rather than maintenance. *Id.*, 319 N.W.2d at 413. The court recognized the distinction and awarded each party a portion of the property interest in the pension. *See also Elliott v. Elliott*, 274 N.W.2d 75, 78 (Minn.1978) (pension rights are to be considered as property rights and social security benefits as income in determining property division and alimony); *Sward v. Sward*, 410 N.W.2d 442, 444 (Minn.Ct.App.1987), *pet. for review granted* (Minn. Sept. 30, 1987) (although military disability benefits may not be divided as a marital asset, they can be considered as income in setting maintenance awards); *O'Brien v. O'Brien*, 343 N.W.2d 850, 852 (Minn.1984) (if the valuation of property awarded is based on the capitalization of an income stream, that income is properly excluded in determining maintenance).

has no right to the increased value of Dorothy's property, yet she may return to claim a portion of the benefits he receives beyond the original valuation assigned by the trial court. This is fundamentally unfair and arbitrary.

C. Maintenance is defined under our statutes as an award of payments "from the future income or earnings" of one spouse to support another spouse. Minn. Stat. § 518.54, subd. 3 (1986); *Zagar v. Zagar*, 396 N.W.2d 98, 101 (Minn.Ct.App. 1986). While a maintenance award is from the future income of a spouse, such an award may not be preserved upon the expectation that the obligor liquidate assets in order to make maintenance payments. *Id.* Once the pension is no longer considered "property" but "income" under the majority's rationale, the very evil this court sought to avoid in *Zagar* will have resulted.

### III.

The majority has adopted the rationale and result of the Wisconsin Court of Appeals in *Pelot v. Pelot*, 116 Wis.2d 339, 342 N.W.2d 64 (Wis.Ct.App.1983). In *Pelot*, the trial court awarded the marital property equitably, with the husband awarded his pension benefits and ordered to pay maintenance. Upon the husband's motion for modification following his retirement, the trial court considered the pension as income. The Wisconsin appellate court reversed, and ordered the trial court to exclude the monthly retirement benefits from income. *Id.* at 342–43, 342 N.W.2d at 66. The court further held:

> It is arbitrary * * * to treat [the husband's] pension payments as income and therefore to deprive him of it before he has had the present enjoyment of the [amount] assigned to him in the property division. [The wife] had the continuous enjoyment of the property she received.

*Id.* at 345, 342 N.W.2d at 67.

The majority follows *Pelot* in reaching its decision, holding that pension benefits should be considered income once the pension's full assigned value (as determined in the earlier dissolution proceeding) has been recovered. *Id.* at 346, 342 N.W.2d at 68.

However, both the *Pelot* decision and the cases it relies upon delayed the decision to classify pension benefits as income until after the party received the pension's original value. In fact, the decisions relied upon by the *Pelot* court held that whether the pension payments should be considered income at a later date "is left to another day." *Id.* at 345–46, 342 N.W.2d at 67 (quoting *D'Oro v. D'Oro*, 187 N.J.Super. 377, 380, 454 A.2d 915, 917 (Ch.Div.1982)).

As a result, both the majority and the *Pelot* court have left a number of questions unanswered, and failed to provide a much needed end to this litigation. While ruling the pension may not be included as income for maintenance purposes, the opinion invites litigation at a later date when William has received the "full value" of his pension.

As the result adopted by the court today creates more problems than it solves, I do not accept it as a correct statement of the law. At first glance, the result reached in both the Wisconsin and New Jersey courts is appealing; it seems to uphold the integrity and finality of the property division, while allowing for consideration of the property at some later date. However, the application of the rule will foster a never ending string of litigation that will serve to embroil the parties and the courts in needless and endless litigation. Additionally, the court's decision today creates or leaves unanswered a number of questions, a few of which I will briefly outline.

First, this litigation will return to this court. The trial court, on remand, has been instructed to consider William's pension, but not to award maintenance out of the income from the pension. The trial court could order William to pay over his entire social security benefit and still come within the rule announced in the opinion. On the other hand, the trial court could order him to pay her nothing. Obviously, such a legal principle will need further clarification; it will be done at the expense of these parties.

Second, this case will return to the trial court in early 1990, when William will have received from the pension an amount equivalent to its original value. But when

should its value be computed? Is it equitable to assume its value at the time of the property division when Dorothy has had use of her property for a number of years and William has not?

At any rate, the pension interest suddenly will have undergone its transformation from property to income. Will this constitute a change in circumstances, as William's income will have increased substantially?

The parties will then be forced to appeal that decision to this court, where we will once again be faced with what essentially amounts to the same issue the majority purportedly decides here today.

We will also be faced with a host of problems relating to the disposition of the funds Dorothy received from the sale of her share of the marital assets. If she has chosen to dispose of the funds, whether in a prudent or imprudent manner, what will be the result on the maintenance award? If she has made substantial gifts to her children or to friends, will this amount be considered when awarding maintenance? Again, the myriad possibilities need not be enumerated. I point out a few of the more obvious problems in order to emphasize the difficulties in allowing continued use of the marital property to determine the appropriate amount of maintenance.

## IV.

Minnesota has provided a number of avenues for spouses to assure that their needs will be met following a dissolution of marriage. *See, e.g.,* Minn.Stat. § 518.64, subd. 2; *Faus v. Faus,* 319 N.W.2d 408 (Minn. 1982). I agree that both parties' financial circumstances must be examined by the trial court in determining the propriety and amount of continued maintenance. *See* Minn.Stat. § 518.552, subds. 1 and 2. However, consistency, fairness, and equity dictate the conclusion that pension benefits previously awarded in an equitable property division not be considered in determination of maintenance payments on a subsequent motion for modification. It is important to resolve, rather than to perpetuate,

litigation over marital assets and maintenance obligations.

In this case, William's uncontradicted affidavit indicates Dorothy has well over $95,000 to meet her current monthly needs, which have diminished from the time of the dissolution. William's income (for maintenance purposes) has decreased substantially, while his monthly needs have increased. Under these facts, Dorothy is not entitled to maintenance, and I would direct the trial court to bring this dissolution to a conclusion and order the discontinuance of maintenance payments.

