**In Re the Marriage of Darlene Margaret NEUBAUER, Petitioner, Respondent,**

v.

**John William NEUBAUER, Appellant.**

**No. C7–88–1390.**

Court of Appeals of Minnesota.

Dec. 27, 1988.

Review Denied March 17, 1989.

Ragnhild Anne Westby, St. Paul, for petitioner, respondent.

Michele Kay DiEuliis, St. Paul, for appellant.

Heard, considered and decided by HUSPENI, P.J., and SCHUMACHER and LESLIE,* JJ.

## OPINION

HUSPENI, Judge.

Arguing that there was no substantial change in circumstances making the original award unfair, appellant, John Neubauer, appeals from a referee's determination, and a trial court's affirmance, of an increase in his maintenance obligation. He also argues that the district court erred in distinguishing *Kruschel v. Kruschel,* 419 N.W.2d 119 (Minn.Ct.App.1988) from the instant case and that this error impermissibly made his pension available to satisfy his maintenance obligations. We affirm.

## FACTS

The parties dissolved their twenty-year marriage on July 31, 1968. At that time, respondent had worked part time as a waitress for approximately six months. Appellant was a general foreman of a welding crew working for NSP. In the dissolution, respondent was awarded:

1. custody of the parties' three minor children plus child support of $25 per week per child;

2. the parties' homestead, subject to the mortgage thereon, as housing herself and the minor children;

3. permanent spousal maintenance of $25 per week.

There was no reference to appellant's pension in the judgment and decree dissolving the parties' marriage.

Respondent continued to work part time after the dissolution. Presently, she works full time for a hotel as maid/cleaning woman. At age 59, she has limited hope of completing the additional service required for vesting her own pension.

The minor children are now emancipated and respondent has paid off the mortgage on her residence. Appellant's heart condition prompted heart surgery in February of 1985. Upon discharge from the hospital, he was told that he could go back to work if he wished to do so but only he could make that decision because only he would know when he was becoming easily tired or suffering the chest pains associated with heart problems.

On December 4, 1986, appellant was served a notice of motion and motion to increase his spousal maintenance obligations for the period prior to his retirement from the original amount of $25 a week ($107.50 per month) to $450 per month. The motion also requested that maintenance after appellant's retirement be based on "the percentage of the pension accrued during the course of the marriage * * * attributable to [respondent's] interest." On July 31, 1987, appellant, citing health reasons, took early retirement at age 62 even though it resulted in a significant decrease in his pension income.

In November 1987, a referee granted respondent's motion for an increase in spousal maintenance to $100 per week ($430 per month). This conclusion was based on findings that at the time of dissolution, respondent had worked:

one-half (½) year, [and] earned $1,349.89 for a projected 1968 annual income of $2,699.78.

The referee also found that respondent's present monthly net income was $627.48.

Regarding appellant's income, both parties agree that his 1968 income was about $11,400. Appellant's present (post-retirement) "disposable income" was found to be $1,549 per month or about $18,588 per year. However, in finding appellant's pre-retirement income for 1984, 1985, and 1986 to be $107,471, $40,543 and $61,077 respectively, the referee declared "[appellant] has experienced a material increase in his income as evinced by his gross income for [these years]."

At the time of the hearing, the referee found respondent's monthly expenses of $1,048.68 to be reasonable. Regarding appellant's expenses, the referee stated:

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

[appellant] shares his expenses with his current spouse and alleges one-half (½) of those expenses to be $1,115.70.

In additional findings, the referee determined that the Federal Cost of Living Index has increased thirty-four percent in the last ten years, and that appellant's retirement was "without malice."

In February of 1988, this court decided *Kruschel v. Kruschel*, 419 N.W.2d 119 (Minn.Ct.App.1988). In March 1988, the district court reviewed and affirmed the referee. The district court also distinguished *Kruschel* from this case allowing consideration of appellant's pension income in determining his maintenance obligation.

## ISSUES

1. Did the trial court abuse its discretion in finding substantially changed circumstances justifying an increase in spousal maintenance?

2. Did the trial court abuse its discretion in increasing appellant's maintenance obligation from $107.50 per month to $430.00 per month?

3. Should the trial court have considered appellant's pension in determining his maintenance obligation?

## ANALYSIS

### I.

The referee specifically concluded that the 1968 award of spousal maintenance from appellant to respondent of $25.00 per week "is unreasonable and unfair."

Appellant, arguing that respondent currently enjoys much better financial circumstances now than she did at the time of dissolution, maintains the order for modification must be reversed as clearly erroneous.

A maintenance obligation

may be modified upon a showing of one or more of the following: (1) substantially increased or decreased earnings of a party; (2) substantially increased or decreased need of a party; (3) receipt of assistance under sections 256.72 to 256.87; or (4) a change in the cost-of-living

for either party as measured by the federal bureau of statistics, any of which makes the terms unreasonable and unfair. On a motion for modification of maintenance, the court shall apply, in addition to all other relevant factors, the factors for an award of maintenance under section 518.552 that exist at the time of the motion.

Minn.Stat. § 518.64, subd. 2 (Supp.1987). In addition "[t]he burden of proof is on the movant," *Halvorson v. Halvorson*, 402 N.W.2d 168, 171 (Minn.Ct.App.1987), to show "clear proof of facts showing * * * a substantial change of circumstances" and an appellate court should be "reluctant to interfere with an exercise of [the trial court's] substantial discretion." *Wiese v. Wiese*, 295 N.W.2d 371, 372 (Minn.1980).

Appellant argues that respondent's yearly gross income has increased from $2,700 to $11,292. He also suggests that her expenses have decreased because she has paid off the mortgage on her residence and because the children are now emancipated. This, he argues, combined with the lesser increase in his income from $11,400 at the time of dissolution to $18,588 at the time of the hearing, demonstrates that there was no substantial change in the parties' incomes and expenses to justify finding the original award unfair and unreasonable. We disagree.

■ Initially, we note that any decrease in respondent's expenses resulting from emancipation of the parties' children is balanced by the fact that respondent no longer receives child support for those children. Also, using the trial court's findings, respondent's annual income has increased from approximately $2,700 at the time of dissolution not to the gross figure of $11,292 appellant quotes but to a net amount of $7,529.76 (not including maintenance).

■ Secondly, in comparing income and expenses, the referee stated that respondent "sustains a substantial deficit against her necessary expenses on a monthly basis." Additionally, accepting the expenses appellant submitted to the referee as accu-

rate, appellant's retirement income exceeds his expenses by $433.30 a month.

Based on all of his findings, the referee concluded "[t]hat the [respondent] has met her burden of proof with respect to Minnesota Statute 518.64 evincing a material change in circumstances." In its review, the district court agreed and affirmed. We also agree. After the dissolution, respondent's job and original award were sufficient for her to support herself and to complete paying off the mortgage on the homestead. Now, with expenses explicitly found to be "reasonable," she encounters a substantial monthly deficit in attempting to support only herself. It is evident that a substantial change in circumstances has occurred.

## II.

Appellant maintains that even if there was a substantial change in his circumstances, it was still an abuse of the trial court's discretion to increase his maintenance obligations to $430.00 per month.

In proceedings to increase maintenance: the court shall apply, in addition to all other relevant factors, the factors for an award of maintenance under section 518.-552 that exist at the time of the motion. Minn.Stat. § 518.64, subd. 2 (Supp.1987). The factors listed in Minn.Stat. § 518.552, subd. 2 (1986) provide:

(a) the financial resources of the party seeking maintenance, including marital property apportioned to the party, and the party's ability to meet needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(b) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment, and the probability, given the party's age and skills, of completing education or training and becoming fully or partially self-supporting.

(c) the standard of living established during the marriage;

(d) the duration of the marriage and, in the case of a homemaker, the length of absence from employment and the extent to which any education, skills, or experience have become outmoded and earning capacity has become permanently diminished;

(e) the loss of earnings, seniority, retirement benefits, and other employment opportunities forgone by the spouse seeking spousal maintenance;

(f) the age, and the physical and emotional condition of the spouse seeking maintenance;

(g) the ability of the spouse from whom maintenance is sought to meet needs while meeting those of the spouse seeking maintenance; and

(h) the contribution of each party in the acquisition, preservation, depreciation, or appreciation in the amount or value of the marital property, as well as the contribution of a spouse as a homemaker or in furtherance of the other party's employment or business.

Regarding the financial resources of the party seeking maintenance, the district court stated:

[respondent's] monthly expenses are reasonable and * * * [her] income falls substantially short of meeting her expenses. * * *

In noting "[respondent] is doing what she can to support herself, notwithstanding her age and lack of skills," the trial court took implicit note of respondent's inability to support herself.

■ Given the trial court's discretion in addressing the section 518.552 factors and given the fact that the parties' marriage had been dissolved almost twenty years earlier, it is not fatal to the trial court's decision that the record lacks explicit findings regarding the standard of living established during the marriage and the respective contributions of the parties to the acquisition of marital property.

The district court tangentially addressed the length of respondent's absence from employment and her foregone employment opportunities as well as her age in stating "[respondent] is facing retirement in a few

years, with limited resources available for her support save social security."

Regarding the ability of the appellant from whom maintenance is being sought to meet his own needs as well as those of respondent, the referee's findings indicate appellant has a $433.30 a month excess of income over expenses.

Considering that the findings address the statutory criteria, and that the district court reviewed and explicitly agreed with the critical findings made by the referee, the increase in appellant's maintenance obligation was not an abuse of discretion.

### III.

█ In *Kruschel v. Kruschel*, 419 N.W. 2d 119 (Minn.Ct.App.1988), we held that pension benefits awarded as property in a dissolution cannot be included in the income of a party to determine that party's maintenance obligation. To do so would be to allow the subsequent redistribution of the pension as income after it had been awarded as property. After the appeal time has passed, property distributions are final under Minn.Stat. § 518.64, subd. 2. However, to the extent the pension is not awarded as property, it may, consistent with *Kruschel*, be considered as income and therefore would be a factor in making a maintenance obligation determination. *See Kruschel* at 122–23.

Appellant asserts that the district court erroneously distinguished *Kruschel* from his case based on the fact that here there was no explicit award of the pension to appellant. He argues that because dissolution decrees should be considered as including their implied as well as their express terms, *see Thompson v. Thompson*, 385 N.W.2d 20, 22 (Minn.Ct.App.1986) (citation omitted), and because respondent was awarded a majority of the parties' marital property, the pension, although not men-

tioned in the original dissolution, is his. Therefore, continues appellant, that pension is not available for consideration in determining his maintenance obligation. We cannot agree.

Initially, *Kruschel* dealt specifically with a pension that had already been awarded as property. That the *Kruschel* pension rights were "property rights previously awarded to [Mr. Kruschel]" weighed heavily in that court's decision. *See Kruschel*, 419 N.W.2d at 122. Here, there was no such prior award of the pension to either party. Indeed, the concept of pension as marital property was formally recognized in Minnesota in *Elliott v. Elliott*, 274 N.W.2d 75, 77 (Minn.1978), a case decided a decade after the dissolution in this matter. The lack of any reference to the pension in either the original decree or in the findings and conclusions which underlay it indicates that the pension was not considered by the trial court in 1968 when it rendered its decision.

█ Respondent's request for "the percentage of the pension accrued during the course of the marriage attributable to [her] interest" appears to be in the nature of a property division request. However, the trial court did not elect to treat appellant's pension as property.[1] Instead, it awarded respondent increased maintenance based on appellant's pension payments thereby treating the pension as income rather than as property. It appears that the statutes may be interpreted broadly enough to permit the trial court, under appropriate circumstances, to elect either treatment. Marital property is defined as:

property, real or personal, including *vested public or private pension plan benefits or rights*, acquired by the parties * * * during the existence of the marriage * * *.

---

1. Because the dissolution in this matter predated *Elliott*, we believe that it may have been within the trial court's discretion to treat appellant's pension as "omitted property." *See Searles v. Searles*, 420 N.W.2d 581, 583 (Minn. 1988) ("[W]here a decree makes no division of any real estate and, indeed makes no mention of any real estate, it would seem the matter of

ownership rights remains to be determined" (footnote omitted)); *Brink v. Brink*, 396 N.W.2d 95, 97 (Minn.Ct.App.1986) ("We are aware of no legal theory under which a party to a dissolution who unintentionally omits an asset from a property division is considered to have abandoned his or her rights to that asset").

Minn.Stat. § 518.54, subd. 5 (emphasis added). Nevertheless, the definition of income includes:

> any form of periodic payment to an individual including, but not limited to * * * *pension* and disability payments.

Minn.Stat. § 518.54, subd. 6 (emphasis added).

Existing case law also supports the possibility of such election:

> there is support for [the] argument that the pension should be viewed as property or income, but not both.

*Kruschel,* 419 N.W.2d at 122.

Further, in *Taylor v. Taylor,* 329 N.W.2d 795 (Minn.1983), the court noted:

> [I]n [*Faus v. Faus,* 319 N.W.2d 408, 410–13 (Minn.1982)] this court upheld a trial court order which awarded the wife a 50% share of her husband's pension benefits [as] spousal maintenance.

*Taylor,* 329 N.W.2d at 798.

We find no error in the trial court's treatment of the pension payments as income.

To the extent appellant complains that the trial court awarded respondent relief in a fashion and in an amount other than that which she requested, we have already observed that while treatment of the pension as property may have been a permitted option, the trial court's resolution of the matter was not inconsistent with present statutory or case law. Respondent has filed no notice of review and thus has raised no objection to the trial court's determination of this issue.

## DECISION

The trial court did not err in determining there had been a substantial change in circumstances. Appellant's pension income was properly considered in determining the maintenance payable to respondent. The trial court appropriately increased appellant's maintenance obligation. No attorney fees are awarded on this appeal.

AFFIRMED.

SCHUMACHER, J., dissents.

SCHUMACHER, Judge (dissenting).

I respectfully dissent. I believe the pension was appellant's nonmarital property, and should not have been considered in determining his maintenance obligation.

In examining appellant's pension, the majority engages in a questionable analysis. Initially, it is not persuasive that *Kruschel v. Kruschel,* 419 N.W.2d 119 (Minn.Ct.App. 1988) is distinguishable simply because in that case the pension benefits were previously awarded, while here they are not. The prior award was important in *Kruschel* because:

> [n]o language in the original decree supports the argument that anything other than a roughly equivalent division of marital assets was intended.

*Kruschel,* 419 N.W.2d at 122.

This is not the situation in the instant case. Examination of the original terms of the dissolution indicates that respondent was awarded a majority of the parties' property including the household goods and furnishings as well as the home. The only tangible property appellant was awarded was a car. He was also awarded various insurance policies, tax deductions and a tax refund, but this does not appear to achieve an equal distribution of the parties' property. To now allow appellant's pension to be invaded to support appellant's maintenance obligation further skews the asset distribution in favor of respondent.

Secondly, the trial court award of permanent maintenance to respondent does not appear determinative. While the majority's observation that the trial court's award of permanent maintenance recognizing respondent's long term needs is appropriate, this does not require consideration of appellant's pension in determining his maintenance obligation. Such inclusion of the pension burdens appellant not with a permanent award subject to modification, *see* Minn.Stat. § 518.64, subd. 2 (Supp.1987), but with a perpetual award he must pay no matter what his circumstances.

The fundamental difference between the majority and the dissent in this case appears to pertain to a presumption regarding the pension. Absent evidence that the

trial court considered a party's pension in a dissolution occurring before *Elliott v. Elliott*, 274 N.W.2d 75 (Minn.1978) in which the supreme court allowed a pension to be considered as property, the majority would presume the pension to be income and therefore available to satisfy a maintenance obligation. Under the same circumstances, I would presume that the pension is the property of the party who earned it and that this is not changed by the court's lack of reference to it in the dissolution proceedings.