In re the MARRIAGE OF Robert
Eugene RICHARDS,
Respondent,

and

Nancy Marion Richards, Appellant.

No. C7–90–2426.

Court of Appeals of Minnesota.

June 18, 1991.

Theodore J. Collins, Collins, Buckley, Sauntry & Haugh, St. Paul, for respondent.

Harold R. Wingerd, St. Paul, John D. Hagen, Jr., Minneapolis, for appellant.

Considered and decided by PETERSON, P.J., and PARKER and FOLEY, JJ.

## OPINION

PETERSON, Judge.

Appellant challenges the trial court's modification of spousal maintenance. Appellant argues the trial court should have made specific findings on respondent's motive for causing a decrease in income by retiring early, and on her motion for attorney fees. We agree, and remand this case to the trial court for further proceedings consistent with this opinion.

## FACTS

The facts of this case are not in dispute. The appellant, Nancy, is 57 years old, and the respondent, Robert, is 58 years old. The parties were married in 1954 and divorced on February 25, 1987. They have no minor children and Robert has since remarried.

Throughout the marriage, Robert worked at 3M and Nancy worked as a homemaker. The parties enjoyed a comfortable standard of living, including a large home in Stillwater, various securities and real estate holdings, and numerous vacations. Nancy raised the children and supervised the household in lieu of developing marketable skills and a personal employment and credit history. Nancy currently suffers from a variety of debilitating ailments.

Upon divorce the court awarded each party approximately $87,400 in cash and property. Robert's 3M pension, valued at $50,556, was awarded to him "free and clear" and Nancy was awarded $37,300 in cash for her interest in Robert's pension. The court further awarded Nancy $1800 per month in permanent spousal maintenance based on Robert's gross 1986 income of $5872 per month.

Following the divorce, Nancy obtained a part-time job as a hospital secretary where she earns $585 net per month. She lives in a $70,000 home with $18,000 in equity. Her investments are worth $41,500 and she has savings of $20,000, all of which is being saved for retirement as she has no pension in addition to social security.

Robert continued working at 3M and his gross monthly income rose to $7404. The value of Robert's pension rose significantly due to generous restructuring of the plan by 3M following the divorce. Under the plan, Robert is permitted to retire early; however, "normal" retirement is at age 65. Robert will turn 65 on February 1, 1998.

On June 26, 1990 Robert filed a motion to terminate spousal maintenance based on an anticipated decrease of income following his early retirement on September 1, 1990. The trial court found that Robert's gross

monthly post-retirement income would be $3771 as compared to a gross monthly income of $5872 at the time of the divorce. The court found that Robert's post-retirement expenses would be $3345 monthly. The court also found that Nancy's current gross monthly income was $637 and that her monthly expenses were $2664.

The trial court found that a substantial change of circumstances would occur when Robert's cash receipts decreased following retirement, and that his cash receipts would be derived primarily from property rights previously awarded to him. The court concluded the change rendered the original maintenance award unreasonable and unfair, and ordered modification pursuant to *Kruschel v. Kruschel,* 419 N.W.2d 119 (Minn.App.1988).

In accordance with *Kruschel,* the court awarded Nancy no part of Robert's $3771 pension income, and decreased Nancy's maintenance to $841 per month, the full amount of Robert's nonpension income. The court made no specific findings on Robert's motive for retiring early and entered no specific order or findings on Nancy's motion for attorney fees.

## ISSUES

I. Did the trial court err by modifying maintenance without making specific findings on the obligor's motives for retiring early and sustaining a substantial decrease of income?

II. Did the trial court err in setting maintenance without considering a substantial increase in the obligor's monthly pension payments since the time of the divorce?

III. Did the trial court err by refusing to award attorney fees without making specific findings on statutory criteria involving the motives and financial positions of the parties?

## ANALYSIS

### I.

■ A court may modify spousal maintenance upon a showing of substantially increased or decreased earnings of a party that makes the terms of the original decree unreasonable and unfair. Minn. Stat. § 518.64, subd. 2 (1990). All orders and decrees in family court proceedings shall contain particularized findings of fact sufficient to support the determination of maintenance. *Stich v. Stich,* 435 N.W.2d 52, 53 (Minn.1989).

In this case, the trial court decreased maintenance pursuant to *Kruschel v. Kruschel,* 419 N.W.2d 119 (Minn.App.1988). In *Kruschel* the court decreased maintenance upon the obligor's voluntary retirement. Even though the obligor's post-retirement pension income was the same as his previous wage income, the court held that the shift from wage income to income generated from property rights previously awarded to him was a substantial change of circumstances. The court reasoned that the change made the original decree unreasonable because property awards are final, and payment of maintenance from pension income would improperly modify the original property award. *Id.* at 122. *See* Minn. Stat. § 518.64, subd. 2 (all divisions of real and personal property shall be final). The obligor's motive for retiring early was not at issue in *Kruschel.*

Nancy concedes that the rule of *Kruschel* applies to this case. However, Nancy argues the trial court erroneously modified support in this case because the court failed to make specific findings on Robert's motives for retiring early. Nancy contends that Robert deliberately retired early in order to avoid or reduce spousal maintenance, and she clearly raised and argued this issue before the trial court. Nancy produced two affidavits from adult sons of the parties stating that Robert told them he was retiring early partly to avoid paying maintenance. Robert did not expressly deny those statements. Instead, Robert stated he was retiring because of unfavorable changes in his position and because of subtle but persistent pressure from a youth-oriented management.

■ Where an obligor voluntarily creates a change of circumstances, the trial court should consider the obligor's motives.

If the change was made in good faith, then the obligee should share in the hardship as if the parties had remained together. *Giesner v. Giesner*, 319 N.W.2d 718, 720 (Minn. 1982). In *Giesner*, an obligor moved to reduce maintenance because he used all of his assets to start his own business after losing his job. The court stated the rule above and remanded the case for consideration of the obligor's subjective intent along with the other modification factors listed in Minn.Stat. § 518.64, subd. 2. Following *Giesner*, this court has remanded several cases for specific findings on an obligor's motive for causing a decrease in income; however, no Minnesota appellate court has yet considered good faith when an obligor voluntarily retires early.

Robert presents no argument that the principles set forth in *Giesner* should not apply to cases where early retirement causes a voluntary reduction of income, and we perceive no reason why *Giesner* should not apply. However, we acknowledge that early retirement may be reasonable and acceptable even where the obligor knows that his or her actions will result in a termination or temporary decrease of maintenance under *Kruschel*.

Therefore, when an obligee raises a colorable claim of bad faith, an obligor must show by a preponderance of the evidence that a decision to retire early was not primarily influenced by a specific intent to decrease or terminate maintenance under *Kruschel*. In determining this issue, the trial court should consider the obligor's health and employment history, the availability of and expectations regarding early retirement at the time of the divorce, and the prevailing managerial policies and economic conditions at the time of retirement, together with whatever subjective reasons the obligor may offer.

Additionally, there is no support for the contention that a reduction in maintenance is automatic under *Kruschel* whenever it appears that maintenance would be paid from previously awarded property. While *Kruschel* properly sets forth one application of the finality provision stated in Minn.Stat. 518.64, subd. 2, *Kruschel* by no means rules out exceptions. A property award may be invaded if the obligor limited his income in bad faith. *Sieber v. Sieber*, 258 N.W.2d 754, 757 (Minn.1977).

In this case the trial court made no findings on Robert's motive for retiring early. Under *Giesner* and its progeny, this constitutes legal error, particularly where the issue was so prominently raised. In order to determine whether a change occurred that made the decree unreasonable, the court should have made findings on Robert's subjective intentions. If, upon remand, the court finds that Robert acted in good faith, the trial court will have demonstrated its consideration of the required factors, and *Kruschel* will control the result. If the court finds that Robert acted in bad faith to limit his income, *Sieber* authorizes the court to order Robert to pay maintenance from personal assets.

## II.

Nancy argues that *Kruschel* does not shield the difference between the monthly payments projected at the time of the divorce and the current monthly payments. At the time of the divorce, Robert's pension was valued at $50,556 and the parties projected monthly payments of $1,377. Upon restructuring after the divorce, the value of the pension grew and the scheduled monthly payout rose to $3,655. Nancy claims the trial court should have considered the difference to be an unsheltered asset and therefore available to be paid out as maintenance.

Whatever the total current value of the pension, under *Kruschel* Robert is entitled to exclusive possession of no less than $50,556 in pension benefits under the original decree. Under *Kruschel*, until Robert receives this amount, Nancy may not claim a share of increased pension income in excess of the original award.

Nancy's reliance on *Kruschel* and *Neubauer v. Neubauer*, 433 N.W.2d 456 (Minn. App.1988), *pet. for rev. denied* (Minn. Mar. 17, 1989) is misplaced. The purpose of *Kruschel* was to avoid a redistribution of property after the divorce became final.

The court held that a pension awarded as property could not be invaded for maintenance until the owner received pension payments equal to the value of the entire asset at the time of the divorce. The court did not hold that income representing the appreciation of the pension after the divorce was immediately available for maintenance.

In *Neubauer,* an obligor challenged the inclusion of his pension in a determination of a motion to increase maintenance. The original decree did not mention the obligor's pension, and the trial court did not consider the pension when it originally divided the parties' assets. Because *Kruschel* applied only to property rights "specifically awarded" to the obligor, the court held that *Kruschel* did not shield the obligor's pension because the pension was not previously awarded as property. *Id.* at 461–62. *Neubauer* did not hold that dollars in excess of an obligor's projected payout were not "specifically awarded" as property and therefore not within the rule of *Kruschel.*

### III.

■ Finally, Nancy argues that the trial court erred when it denied her request for attorney fees without making specific findings. Under the current statute, fees shall be awarded provided that the court finds:

> (1) that the fees are necessary for the good-faith assertion of the parties rights * * *;
>
> (2) that the party from whom fees, costs, and disbursements are sought has the means to pay them; and
>
> (3) that the party to whom fees, costs, and disbursements are awarded does not have the means to pay them.

Minn.Stat. § 518.14 (1990).

The trial court in this case failed to make any specific findings on Nancy's motion for attorney fees. However, the court made general findings on the income and expenses of the parties and, in order to award maintenance from Robert's nonpension income, the court noted in its memorandum that Robert has the means to meet his needs, but Nancy does not. These findings could support an award of fees under the statute. But, given the mandatory language in the statute, and the need for findings on the specific factors set forth in the statute, the trial court erred by failing to make specific findings on this issue. An award of attorney fees on remand may include fees incurred on the original motion, and fees incurred on appeal.

### DECISION

The trial court erred by failing to make findings on Robert's motives for retiring early, and on Nancy's motion for attorney fees. The modification order is vacated and remanded for further proceedings consistent with this opinion.

Remanded.