In re the Marriage of Shirley
K. **WALKER**, Petitioner,
Respondent,

v.

Beverly James **WALKER**, Appellant.

No. C5–96–137.

Court of Appeals of Minnesota.

Sept. 3, 1996.

Mark H. Gardner, Bloomington, for Appellant.

Judith L. Oakes, J. Oakes & Associates, St. Paul, for Respondent.

Considered and decided by HUSPENI, P.J., TOUSSAINT, C.J., and FOLEY, J.*

## OPINION

HUSPENI, Judge.

In this appeal from an order modifying spousal maintenance, appellant obligor argues that the district court erred in considering a portion of appellant's annual pension benefits as "income" rather than "property" and in imputing to him certain income from pension benefits that he has elected to receive on a deferred basis. Appellant also claims that the court made erroneous findings regarding his expenses and the parties' respective financial resources, and he challenges the amount of the award as arbitrary. In addition, appellant argues that the district court abused its discretion by requiring him to secure his maintenance obligation by obtaining a life insurance policy with respondent obligee as the sole beneficiary. By notice of review, the respondent obligee challenges the findings supporting the maintenance award and the district court's denial of her request for attorney fees. Respondent also requests attorney fees on appeal. We find no abuse of discretion in the district court's determination of appellant's income available for consideration in awarding maintenance, in its determination of the parties' expenses and financial resources, or in its requirement that appellant maintain insurance. Neither do we find error in the findings regarding maintenance nor an abuse of discretion in denying respondent attorney fees. Therefore, we affirm. We deny attorney fees on appeal.

## FACTS

The parties' 30–year marriage was dissolved in January 1990. The original judgment required appellant, Beverly James

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 2.

Walker, to provide respondent, Shirley Walker, with maintenance in the amount of $2,800 per month. The maintenance was to continue until the death of either party, the remarriage of respondent, or further order of the court.

The judgment also provided for the division of appellant's accrued pension benefit. The parties stipulated that appellant's accrued benefit as of November 30, 1989, was approximately $31,500 per year. Under the judgment, this accrued benefit was to be "divided equally between the parties as of December 22, 1989."

At the time of the dissolution, both parties were employed. Respondent had an average annual gross income of $33,000 from a job as a real estate agent. Appellant earned a gross income of approximately $120,000 from Unisys Corporation during 1989, the calendar year preceding the dissolution.

Appellant was involuntarily terminated from his job at Unisys effective May 5, 1995. He received a termination package consisting of a series of payments ending on November 24, 1995, which contributed in part to his 1995 total gross income of $105,352.44. Appellant was approximately 59 years old at the time of his termination. He began receiving retirement benefits from his pension plan on May 19, 1996.

Appellant has remarried. Although he was eligible to receive an annual pension benefit of approximately $24,522, he elected to receive a smaller amount of $18,883.20 per year, so that his current wife could continue to receive benefits after his death.

Following the termination of his employment, appellant filed a motion to reduce to $2,300 his required monthly maintenance payments for May through November of 1995 and to terminate maintenance altogether after December 1, 1995. The district court ordered that appellant provide reduced maintenance, in the amount of $650 per month, beginning in January 1996. In modifying appellant's maintenance obligation, the court considered the full amount of pension benefits for which appellant was eligible per year rather than the smaller amount that he actually elected to receive. Of the full

amount, approximately $24,522, the court considered $9,022 per year as income for purposes of spousal maintenance.

The district court order also stated that the parties would be responsible for their own attorney fees.

## ISSUES

1. Should the district court have considered appellant's pension in determining his maintenance obligation?

2. Did the district court properly impute appellant's voluntarily deferred pension benefits as present income?

3. Did the district court clearly err in making its findings in regard to appellant's expenses, the parties' comparative financial resources, and appellant's lack of bad faith?

4. Did the district court abuse its discretion by requiring appellant to secure his maintenance obligation by obtaining and maintaining a life insurance policy with respondent as the sole beneficiary?

5. Did the district court abuse its discretion by denying respondent's request for attorney fees?

## ANALYSIS

■ A court may modify spousal maintenance upon a showing of substantially decreased earnings of a party that makes the terms of the original decree unreasonable and unfair. Minn.Stat. § 518.64, subd. 2(a) (1994). The decision to modify a maintenance award is one within the "substantial discretion" of the district court. *Kaiser v. Kaiser,* 290 Minn. 173, 179, 186 N.W.2d 678, 683 (1971).

The parties' original judgment provided that appellant's retirement "could well constitute a sufficient change of financial circumstances * * * for a modification of the alimony obligation * * *." Although the district court made a finding to this effect in the order modifying appellant's maintenance obligation, appellant argues that the district court abused its discretion by only reducing his obligation, rather than terminating it altogether.

## I. Pension Valuation

Appellant first contends that the district court erred in considering a portion of his annual pension benefits as income.

Pension benefits awarded as property in a dissolution cannot be included in the income of a party when determining that party's maintenance obligation. *Kruschel v. Kruschel,* 419 N.W.2d 119, 123 (Minn.App. 1988). In *Kruschel,* this court held that a district court could not order an obligor to pay maintenance out of his pension payments until he "received from the pension an amount equivalent to its value as determined in the original property distribution." *Id.* Once the obligor has received that amount, a court may properly consider his subsequent pension benefits as "income" for maintenance purposes. *Id.*

In *Kruschel,* the district court had determined the present value of the obligor's full interest in his pension plan at the time of the couple's dissolution. *Id.* at 120. By contrast, the parties here stipulated to a valuation of the pension that represented an *annual* amount of anticipated benefits: "approximately $31,500 per year." The stipulated dissolution judgment of 1990 divided that interest equally between the parties as part of their property distribution.

Appellant argues that, because the parties here selected an annual measurement for valuing his pension, a court can never determine when his interest in the pension ceases to be a property interest and becomes "income" from which maintenance may be awarded under *Kruschel.* We disagree. Where, as here, the parties have stipulated at the time of dissolution to a valuation representing an amount of pension benefits anticipated per year, the district court may consider annual benefits that the obligor receives in excess of his allocated property interest in that amount as "income" when modifying his maintenance obligation.

Upon retirement, appellant was eligible to receive approximately $24,522 per year through his employer-sponsored pension plan. Of this amount, the court determined that $15,500, which is approximately one-half of appellant's accrued pension interest mea-sured in anticipated annual benefits at the time of dissolution, represented appellant's property interest. The court considered the difference of $9,022 as income available in making a maintenance award. The parties, through their agreement at the time of the marriage dissolution, chose to value appellant's pension interest in terms of anticipated annual payments. In view of the parties' election of this method of valuation, we cannot find that the district court abused its discretion by applying a similar rationale in determining appellant's income for maintenance purposes.

## II. Imputed Income

Appellant next argues that the district court erred by imputing to him income from a deferred portion of his pension. We find no error.

"A party who remarries after dissolution and accepts additional obligations of support does so with full knowledge of his or her prior obligations under [the dissolution] * * * proceeding." Minn. R. Gen. Pract. 303.06(d) (derived from Minn. R. Fam. Ct. P. 7.01). In addition, the payment of maintenance "takes priority over payment of debts and other obligations." Minn. R. Gen. Pract. 303.06(c). An appendix attached to the parties' dissolution judgment apprised them both of these principles.

When appellant retired, he had the option of receiving pension benefits of approximately $24,522 per year terminating upon his death. Instead, he elected a smaller sum of benefits, $18,883.20 per year, terminating upon his current spouse's death. While appellant certainly had the discretion to provide for the welfare of his present wife, we find no error in the district court's recognition that appellant had the right to receive his full pension benefits, although he chose not to, or in the court's consideration of the full amount as income when modifying spousal maintenance.

## III. Amount of Maintenance Award

The parties both assert that the district court made several erroneous findings in determining the amount of maintenance to award to respondent. We will not set aside the district court's findings of fact unless

they are clearly erroneous. Minn. R. Civ. P. 52.01; *Kornberg v. Kornberg*, 542 N.W.2d 379, 386 (Minn.1996).

### A. Husband's Financial Needs

■ Appellant first challenges the district court's finding that his individual monthly expenses were $2,400. The district court found appellant's household, including his current wife and her two children, expended $8,167 per month. The $2,400 amount attributed directly to appellant is more than one-fourth of the total expenses of the four-member household. Upon review of the record, we conclude that this finding is not clearly erroneous.

### B. Comparative Financial Resources

■ Appellant next claims that the district court erred in determining the parties' respective financial circumstances. In particular, he challenges the court's failure to rely on the valuation of appellant's assets as of the date of dissolution (over five years before he petitioned for modification of his maintenance obligation). We find no error. Further, appellant asks the court to note that respondent's assets have nearly doubled in value since that date. It would be incongruous to apply one valuation date to appellant and another to respondent. The district court did not err by rejecting appellant's proposed findings in regard to the parties' financial resources.

### C. Bad Faith

■ Respondent by notice of review argues that the district court improperly determined appellant's ability to pay maintenance. *See* Minn.Stat. § 518.552, subd. 2(g) (1994) (listing obligor's ability to meet own needs while meeting those of obligee as factor to be considered in determining amount of maintenance award). She contends that the district court should have considered appellant's "earning capacity" when it modified his maintenance obligation. *See Warwick v. War-*

*wick*, 438 N.W.2d 673, 677–78 (Minn.App. 1989) (extending earning capacity measurement rules from child support cases to spousal maintenance cases). She also argues that the district court should have issued an order to compel appellant to make efforts to seek employment.

Respondent's underlying argument is that the district court erroneously found that appellant did not act in bad faith by retiring and not seeking further employment. *See id.* at 678 (holding that trial court did not err in considering earning capacity where court had made finding of bad faith).[1] Factors to be considered when determining whether an obligor's early retirement is in bad faith include:

> the obligor's health and employment history, the availability of and expectations regarding early retirement at the time of the divorce, and the prevailing managerial policies and economic conditions at the time of retirement, together with whatever subjective reasons the obligor may offer.

*In re Marriage of Richards*, 472 N.W.2d 162, 165 (Minn.App.1991); *see also In re Marriage of Smith*, 77 Ill.App.3d 858, 33 Ill.Dec. 332, 337, 396 N.E.2d 859, 864 (1979) (considering whether obligor retired before reaching the customary retirement age, while still in good health, as the result of circumstances completely under his own control, and under circumstances suggesting improper motives due to the timing of his resignation). Although the parties may not have anticipated appellant's retirement at the time of their dissolution in 1990, the district court found that appellant was not in good health, that his retirement in 1995 was involuntary, and that it was not motivated by an intent to terminate appellant's maintenance obligation. The evidence adequately supports these findings.

Under these circumstances, we conclude that the district court did not err in finding that appellant did not act in bad faith by retiring and not seeking new employment.

---

1. We note that, when setting child support, courts are no longer required to find bad faith before considering an obligor's earning capacity. *See* 1991 Minn. Laws ch. 292, art. 5, § 76 (creating Minn.Stat. § 518.551, subd. 5b (Supp.1991)); *Franzen v. Borders*, 521 N.W.2d 626, 628 (Minn.

App.1994) (discussing applicability of 1991 amendment to determinations of child support). However, a finding of bad faith remains a prerequisite to consideration of an obligor's earning capacity when awarding maintenance.

The district court, therefore, did not need to consider appellant's earning capacity in its calculations, and it did not err in failing to require appellant to try to find new employment and to report to the court on his job search efforts.

For similar reasons, we also conclude that the district court properly rejected respondent's suggestion that the court impute to appellant income that he allegedly saved by assuming a homemaker role after his retirement. Unlike a District of Columbia case that respondent cites in support of her argument, the facts presented here do not involve an obligor who is voluntarily unemployed primarily so that he can take care of his young children. *See Freeman v. Freeman,* 397 A.2d 554, 556–57 (D.C.1979) (ordering unemployed father to pay one-half of imputed income from babysitting newborn child as support for child from prior marriage). Because of the different circumstances involved here, we are not persuaded that the rationale of *Freeman* should be applied in this case. *See Guyton v. Guyton,* 602 A.2d 1143, 1145 (D.C.1992) (declining to extend *Freeman* to situation involving involuntary termination).

### D. Arbitrariness of Award Amount

Finally, appellant challenges the district court's maintenance award of $650 per month ($7,800 per year) as arbitrary. We disagree.

The district court determined that appellant owned various assets that were capable of producing $11,500 in income per year; that he was eligible to receive annual pension benefits of $24,522, out of which $15,500 represented his property interest in the pension; and that his expenses were $2,400 per month

($28,800 per year). The district court found that respondent earned an annual gross income of $31,620 from a job as a realtor; that she could earn $11,500 from income-producing assets; and that her expenses were $3,850 per month ($46,200 per year). These findings, amply supported by evidence in the record, together with additional findings relating to the factors under Minn.Stat. § 518.552, subd. 2 (1994), convince us that the court did not act arbitrarily by setting $650 as appellant's monthly maintenance obligation.[2]

### IV. Life Insurance

Appellant next challenges an amendment to the judgment of dissolution requiring him to maintain a life insurance policy with a face amount of $50,000 and with respondent as the sole beneficiary. We find no abuse of discretion.

The district court "has the discretion to consider whether the circumstances justifying an award of maintenance also justify securing it with life insurance." *Laumann v. Laumann,* 400 N.W.2d 355, 360 (Minn.App. 1987), *review denied* (Minn. Nov. 24, 1987). Factors justifying such a security requirement may include an award of permanent maintenance, the long duration of a marriage, and the recipient spouse's age and lack of marketable skills. *Arundel v. Arundel,* 281 N.W.2d 663, 667 (Minn.1979).

Here, the district court awarded respondent permanent maintenance at the conclusion of a 30–year marriage. Respondent is 60 years old. On these facts, we conclude that the district court did not abuse its discretion by requiring appellant to obtain a life insurance policy to secure his maintenance obligations.

---

**2.** Minn.Stat. § 518.64, subd. 2(b) (1994) requires that, on a motion to modify a maintenance award, the district court must consider the factors under Minn.Stat. § 518.552, subd. 2 (1994), including the standard of living established during the marriage. *Maeder v. Maeder,* 480 N.W.2d 677, 679 (Minn.App.1992), *review denied* (Minn. Mar. 19, 1992); *Rapacke v. Rapacke,* 442 N.W.2d 340, 343 (Minn.App.1989). We are aware that, with the inclusion of the maintenance award, respondent's annual income of $50,920 will exceed her present annual expenses by $4,720. However, her total income will continue to be lower than the expenses associated with the standard of living she enjoyed during the marriage; the district court found that respondent's reasonable annual expenses were $78,000 at the time of the parties' dissolution. Under these circumstances, we do not find the district court's award of maintenance to respondent to be excessive. This is not the type of unusual case that would require a reversal of spousal maintenance award. *See Lyon v. Lyon,* 439 N.W.2d 18, 22 (Minn.1989) (reversing maintenance award to obligee who had annual expenses of $78,000 and an annual income of over $200,000).

### V. Attorney Fees

Respondent seeks review of the district court's denial of her request for attorney fees.

 We will uphold the district court's denial of attorney fees absent an abuse of discretion by that court. *Nardini v. Nardini*, 414 N.W.2d 184, 199 (Minn.1987). An award of attorney fees is proper when a court finds

(1) that the fees are necessary for the good-faith assertion of the party's rights in the proceeding and will not contribute unnecessarily to the length and expense of the proceeding;

(2) that the party from whom fees, costs, and disbursements are sought has the means to pay them; and

(3) that the party to whom fees, costs, and disbursements are awarded does not have the means to pay them.

Minn.Stat. § 518.14, subd. 1 (1994). Our consideration of these factors here leads us to conclude that the district court did not abuse its discretion in denying respondent's request for attorney fees.

 Respondent has also filed a motion to recover attorney fees associated with this appeal, pursuant to Minn.Stat. § 549.21, subd. 2 (1994). A party may receive reasonable attorney fees if the opposing party or attorney

acted in bad faith; * * * asserted an unfounded position solely to delay the ordinary course of the proceedings or to harass; or committed a fraud upon the court.

*Id.; see also Dabrowski v. Dabrowski*, 477 N.W.2d 761, 766 (Minn.App.1991) ("Attorney fees may be awarded in dissolution cases where the appeal was frivolous or in bad faith."). Although we affirm the district court, we do not find that appellant's arguments are of such a nature that would require us to award respondent attorney fees on appeal under Minn.Stat. § 549.21 (1994). We therefore deny respondent's motion for attorney fees.

### DECISION

The district court did not abuse its discretion by considering a portion of appellant's pension benefits in determining his maintenance obligation or in imputing to him income from a voluntarily deferred portion of the benefits. The district court did not clearly err in its findings regarding appellant's expenses, the parties' respective financial resources, and appellant's lack of bad faith. The district court did not abuse its discretion by requiring appellant to secure his maintenance obligation by obtaining a life insurance policy naming respondent as the sole beneficiary. The district court acted within its discretion by denying respondent's request for attorney fees, and we deny attorney fees on appeal.

**Affirmed.**