*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0561**

In re the Marriage of:
Denise Kaye Newman, petitioner,
Appellant,

vs.

Thomas Joseph Newman,
Respondent.

**Filed December 21, 2015
Affirmed
Kirk, Judge**

Wabasha County District Court
File No. 79-FA-14-254

John T. Burns, Jr., Burns Law Office, Burnsville, Minnesota (for appellant)

Angela V. Lallemont, Price, McCluer & Plachecki, Winona, Minnesota (for respondent)

Paul Janzen, Wabasha, Minnesota (guardian ad litem)

Considered and decided by Kirk, Presiding Judge; Worke, Judge; and Smith, Judge.

**U N P U B L I S H E D   O P I N I O N**

**KIRK**, Judge

In this marital-dissolution proceeding, appellant-mother argues that the district court erred by: (1) granting respondent-father sole physical custody of the minor children; (2) failing to award her permanent spousal maintenance; (3) failing to make sufficient

findings in dividing the marital property; and (4) using mother's potential income when calculating her child-support obligation. We affirm.

**FACTS**

In March 2014, after over 16 years of marriage, appellant-mother Denise Kaye Newman, age 43 years, petitioned for marital dissolution from respondent-father Thomas Joseph Newman, age 53 years. The parties have three children who were minors at the time of the marital dissolution. In 2003, mother was employed as a medical secretary, but quit working and transitioned into being a full-time homemaker. Father was employed as a cook supervisor for over 22 years. He voluntarily retired early when he was 54 years old.

Following a court trial in January 2015, the district court issued its findings of fact, conclusions of law, order for judgment and judgment and decree. The district court awarded the parties joint legal custody and father sole physical custody, subject to mother's reasonable parenting time. In its findings, the district court barred mother from including her boyfriend during her parenting time. The district court divided the marital assets evenly, awarding each party $483,383. The district court found that neither party could individually afford to pay the mortgage of the marital home. The court ordered the parties to sell the house and mother to sign a purchase agreement to accept an outstanding offer.

The district court denied mother's request for permanent spousal maintenance, finding that, although she was unemployed, she was capable of working full-time. However, it awarded her two years of rehabilitative spousal maintenance in the amount of $1,500 per month to pay for a period of retraining.

On February 26, mother moved for amended findings and to stay the property division. In March, the district court denied mother's motion and found her in constructive contempt of court for failing to cooperate in the post-dissolution property division. In April, mother filed a notice of appeal to this court and posted a supersedeas bond, as ordered by the district court, to stay the property division.

Mother appeals.

## DECISION

### I. The district court did not err in awarding father sole physical custody.

A district court's primary objective in custody matters is determining the best interests of the child. Minn. Stat. § 518.17, subd. 1(a) (2014). A district court must consider "all relevant factors," including 13 statutory factors relevant to a child's best interests. "Appellate review of custody determinations is limited to whether the [district] court abused its discretion by making findings unsupported by the evidence or by improperly applying the law." *Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn. 1985). A district court's findings of fact will be sustained unless they are clearly erroneous. *Id.*; *see* Minn. R. Civ. P. 52.01 (stating that findings of fact are not set aside unless clearly erroneous). The law "leaves scant if any room for an appellate court to question the [district] court's balancing of best-interests considerations." *Vangsness v. Vangsness*, 607 N.W.2d 468, 477 (Minn. App. 2000).

Mother argues that the district court erred by awarding father sole physical custody without addressing the joint-custody factors in Minn. Stat. § 518.17, subd. 2 (2014). Under that statute, the district court must analyze the joint-custody factors "where either joint

3

legal or joint physical custody is contemplated or sought." The joint-custody factors are: (1) the parents' ability to cooperate in rearing their child; (2) methods for resolving parenting disputes and the parties' willingness to use them; (3) whether it would be detrimental to the child to give one parent sole authority over the child's upbringing; and (4) whether domestic abuse, as defined under Minn. Stat. § 518B.01 (2014), has occurred between the parents. Minn. Stat. § 518.17, subd. 2(b).

In their respective petitions for marital dissolution, each party requested sole physical custody. But at trial, mother acknowledged that she had requested joint physical custody in a pretrial statement.

Here, the record shows that the district court properly considered the joint-custody factors. At trial, the district court noted that "acrimony and personal feelings, personal attacks have been rampant in this case." *See* Minn. R. Civ. P. 52.01 (noting that statements from the bench can, if recorded, constitute findings of fact). This bears negatively on the parties' ability to cooperate with one another under a joint physical custody arrangement. The parties did not demonstrate any positive methods for resolving outstanding disputes concerning the children. The district court found that a current harassment restraining order barred father from harassing mother.

While there was no evidence of domestic abuse, the district court indicated deep concern about the safety of the parties' daughters around mother's live-in boyfriend, who had been convicted of felony invasion of privacy of a minor for hiding a video camera in his 17-year-old step-daughter's bathroom and attempting to videotape her showering. In awarding father sole physical custody, the district court cited the guardian ad litem's

4

(GAL's) recommendation that mother's parenting time not include her boyfriend, and that the parties have a daughter who will soon be the same age as the boyfriend's step-daughter. The district court's findings relating to mother's boyfriend directly impact the physical and emotional safety of the parties' daughters if mother were awarded physical custody.

Mother next argues that the district court clearly erred in its findings on the fifth and tenth best-interests factors. Mother contends that the district court erred in finding that the fifth best-interests factor, which requires the district court to examine "the interaction and interrelationship of . . . any other person who may significantly affect the child's best interests" favored father. Minn. Stat. § 518.17, subd. 1(a)(5). Mother argues that the district court merely speculated on her boyfriend's potential effect upon the children because the boyfriend currently does not have any meaningful interaction or interrelationship with them, and that the order prohibits mother from including him in parenting time.

The district court addressed all 13 best-interests factors and found nine to be neutral, one inapplicable, two favored father, and that one favored mother. The record supports the district court's finding that the fifth best-interests factor weighed in father's favor because mother was currently involved in a relationship with a convicted felon who had harmed his own step-daughter, as well as father's strong relationship with mother's family and the children's close relationship with father's adult children, who are the children's half-siblings.

The fifth best-interests factor allows the district court to consider the interaction and interrelationship of a person who *may* significantly affect the children's best interests,

5

which could reasonably include mother's boyfriend. *Id.* At trial, the GAL expressed concern about mother's ability to make sound decisions regarding the safety of her children in light of her continued relationship with her boyfriend. The record also supports the district court's determination that father's familial connections were stronger than mother's, as he maintained contact with mother's father, his own mother, his adult children, and his siblings.

Mother next challenges the district court's finding on the tenth best-interests factor, "the capacity and disposition of the parties to give the child love, affection, and guidance, and to continue educating and raising the child in the child's culture and religion or creed, if any." *Id.*, subd. 1(a)(10). Here, the record supports the district court's finding that this factor weighed slightly in favor of father because he regularly attended church with the children. While mother no longer attended the same church, she provided no evidence that she is continuing to raise the children in any religious tradition. Hence, the district court did not clearly err in finding that this factor weighed slightly in favor of father. We conclude that the district court did not abuse its discretion in its findings and conclusions of the best-interests factors.

## II. The district court did not err in denying mother's request for permanent spousal maintenance.

Generally, the district court exercises broad discretion in its decisions regarding spousal maintenance. *Erlandson v. Erlandson*, 318 N.W.2d 36, 38 (Minn. 1982). This court reviews the district court's spousal-maintenance determinations for an abuse of discretion. *Dobrin v. Dobrin*, 569 N.W.2d 199, 202 (Minn. 1997). An abuse of discretion

occurs when the district court's decision is against logic or not supported by the record. *Robert v. Zygmunt*, 652 N.W.2d 537, 544 (Minn. App. 2002), *review denied* (Minn. Dec. 30, 2002). "A district court's determination of income for maintenance purposes is a finding of fact and is not set aside unless clearly erroneous." *Peterka v. Peterka*, 675 N.W.2d 353, 357 (Minn. App. 2004). We review questions of law relating to spousal maintenance de novo. *Van de Loo v. Van de Loo*, 346 N.W.2d 173, 175 (Minn. App. 1984).

Mother argues that the district court's decree is deficient because: (1) it failed to make any finding regarding the parties' marital standard of living or her ability to support herself at the marital standard of living after she received educational retraining; and (2) father has the financial ability to pay permanent spousal maintenance of over $1,500 a month.

Before determining whether a party should be granted spousal maintenance, the district court is required to consider several factors, including: (1) the ability of the party seeking maintenance "to meet needs independently"; (2) the probability of "becoming fully or partially self-supporting"; (3) the marital standard of living; (4) the duration of the marriage and the period of time the party seeking maintenance has been absent from employment; (5) whether the party seeking maintenance has lost earnings or opportunities; (6) the age and physical and emotional condition of the party seeking maintenance; (7) the ability of the potential obligor to meet needs while paying maintenance; and (8) the contribution of each party to the acquisition of marital property and the furtherance of the other party's employment. Minn. Stat. § 518.552, subd. 2 (2014). In divorce cases involving property, spousal maintenance, and child-support issues, "the [district court]

7

must of necessity 'balance the equities' in the light of facts then existing or in the light of facts that will with reasonable probability exist in the future." *Brugger v. Brugger*, 303 Minn. 488, 491, 229 N.W.2d 131, 134 (1975) (quotation marks omitted).

We conclude that the district court did not err in denying mother permanent spousal maintenance. It found that: (1) neither party could independently afford to maintain the marital standard of living; (2) mother was capable of earning $36,498 annually working full-time; (3) mother was currently unemployed while father had retired a few years before he would be administratively fired after working full-time for over 22 years; (4) in light of mother's needs for retraining, it was appropriate to require father to pay $1,500 monthly in rehabilitative spousal maintenance; (5) mother had not applied for any job since the parties' initial separation in November 2013; (6) at mother's age, and with some retraining, she was capable of returning to her previous occupation as a medical secretary; (7) father's gross monthly income for child-support purposes was $3,252, but his monthly expenses exceeded his income; and (8) each party was awarded $434,483 in assets, and that mother could use this to pay for her needs and tuition. The district court essentially found that, with her property settlement and some education, mother had the "ability to meet needs independently." Minn. Stat. § 518.552, subd. 2(a).

The district court also properly considered the *Richards* factors after mother raised a colorable claim that father had retired early in bad faith, and that the court should have imputed employment income to him. *See In re Marriage of Richards*, 472 N.W.2d 162, 164-65 (Minn. App. 1991). When an obligee raises a colorable claim that the obligor retired in bad faith, the obligor must show by a preponderance of the evidence that a

decision to retire early was not primarily influenced by "a specific intent to decrease or terminate [spousal] maintenance." *Id.* "The [district] court should consider the obligor's health and employment history, the availability of and expectations regarding early retirement at the time of the divorce, and the prevailing managerial policies and economic conditions at the time of retirement," along with any subjective reasons offered by the obligor. *Id*. at 165.

The district court found: (1) father was currently 54 years old and was in good health; (2) he had worked as a head cook for 22 years and eight months; (3) he met his employer's retirement qualifications; (4) he would have been administratively fired from his position in three years according to his employment contract and federal law; and (5) he was no longer eligible for a raise and had not received one in four years. Further, father testified that he retired early in order to take care of the children. The district court properly concluded that father met his burden to prove that he retired in good faith.

## III. The district court did not abuse its discretion in dividing the marital property.

"A [district] court has broad discretion in evaluating and dividing property in a marital dissolution and will not be overturned except for abuse of discretion." *Antone v. Antone*, 645 N.W.2d 96, 100 (Minn. 2002). "We will affirm the [district] court's division of property if it had an acceptable basis in fact and principle even though we might have taken a different approach." *Id.* "An equitable division of marital property is not necessarily an equal division." *Crosby v. Crosby*, 587 N.W.2d 292, 297 (Minn. App. 1998), *review denied* (Minn. Feb. 18, 1999).

Mother challenges the district court's valuation and division of marital property, arguing that: (1) there is no evidence to support a $100,000 valuation of the parties' unspecified personal property; (2) the district court erred by reducing father's IRA account from $559,052 to $523,887 because he improperly withdrew the monies without mother's permission; and (3) the district court did not take into account the fact that mother's occupation as a homemaker greatly reduced her ability to accumulate property.

We conclude that the district court did not err in its valuation or division of the parties' personal property. Appellate courts defer to district court credibility determinations. *Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988). The district court implicitly credited father's testimony that the value of the remaining property was $100,000, and mother never testified to or submitted any evidence to support a different valuation. *See Eisenschenk v. Eisenschenk*, 668 N.W.2d 235, 243 (Minn. App. 2003) (stating that "a party cannot complain about a district court's failure to rule in [her] favor when one of the reasons it did not do so is because that party failed to provide the district court with the evidence that would allow the district court to fully address the question"), *review denied* (Minn. Nov. 25, 2003). Moreover, the record shows that mother signed the requisite documents authorizing father to withdraw monies from his IRA, which he used to meet his monthly budgetary expenses and temporary child-support obligation. The record also shows that, with rehabilitative spousal maintenance and her property settlement, mother is capable of meeting her needs independently.

**IV.** **The district court did not err in calculating mother's child-support obligation.**

"If a parent is voluntarily unemployed, underemployed, or employed on a less than full-time basis, . . . child support must be calculated based on a determination of potential income." Minn. Stat. § 518A.32, subd. 1 (2014). A parent is not considered to be in this category if he shows that his unemployment or underemployment: (1) "is temporary and will ultimately lead to an increase in income"; or (2) "represents a bona fide career change that outweighs the adverse effect of that parent's diminished income on the child." *Id.*, subd. 3(1), (2) (2014). This court reviews a factual finding on whether a party is voluntarily unemployed for clear error. *Welsh v. Welsh*, 775 N.W.2d 364, 370 (Minn. App. 2009).

Mother argues that the district court erred in attributing income to her because it found that she needed retraining and ordered father to pay her rehabilitative spousal maintenance for two years.

Here, the district court did not clearly err in attributing income to mother because it implicitly found that she was voluntarily unemployed. It found that mother was unemployed, had the ability to work on a full-time basis, but had not applied for a job since November 2013. On these facts, the district court calculated mother's potential income to be $2,080 based on her working full-time (40 hours) at 150% of the state's minimum wage of $8.00 per hour. *See* Minn. Stat. § 518A.32, subd. 2(3) (2014).

Mother never testified that her current unemployed status was temporary and would lead to an increase in income, or that she was pursuing a career change, and the record does not indicate that either was the case. *See id.*, subd. 3(1), (2); *see Eisenschenk*, 668 N.W.2d

11

at 243. Therefore, the district court did not err in attributing income to mother for child-support purposes.

**Affirmed**.